## In the
## United States Court of Appeals
### For the Seventh Circuit

No. 08-1569

GABBANELLI ACCORDIONS & IMPORTS, L.L.C.,

*Plaintiff-Appellee*,

*v.*

DITTA GABBANELLI UBALDO DI ELIO GABBANELLI,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 4048—**James B. Zagel**, *Judge*.

ARGUED JANUARY 21, 2009—DECIDED JULY 30, 2009

Before POSNER, FLAUM, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. This suit under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, grows out of a protracted family dispute over trademarks. The district judge, on the plaintiff's motion for summary judgment, awarded the plaintiff, which we'll call "American Gabbanelli," a permanent injunction, damages, and attorneys' fees. The defendant, which we'll call "Italian Gabbanelli," appeals.

American Gabbanelli began life in the mid-1960s as the U.S. distributor for the predecessor of Italian Gabbanelli, a manufacturer of accordions in Italy. In 1996 and 1997 American Gabbanelli obtained registered U.S. trademarks on the name "Gabbanelli" for use on accordions and began importing accordions designed to its specifications and manufactured by Italian Gabbanelli and other companies. In 1999 American Gabbanelli sued Italian Gabbanelli in an Italian court, complaining about the Italian company's using the Internet domain name www.gabbanelli.com and advertising the Gabbanelli trademark over the Internet. The defendant won that suit, which was followed by two more trademark suits in the Italian court, one by each of the parties.

The parties settled their differences (they thought!) later that year by an agreement that gave American Gabbanelli the exclusive right to use the Gabbanelli mark in North America and Italian Gabbanelli the exclusive right to use it in Italy. The agreement provided that "any further controversy" would be resolved by arbitration conducted in Italy in the Italian language, with each party to appoint an arbitrator and the two arbitrators to appoint a third arbitrator, who would be the chairman of the arbitration panel.

A "further controversy" soon arose and each party appointed an arbitrator. But for unexplained reasons the third arbitrator has never been appointed and no arbitration has ever been conducted. Instead, Italian Gabbanelli filed another suit in the Italian court, in May 2002, seeking a transfer of American Gabbanelli's U.S. trade-

marks to it. Recently that court issued its judgment, and it is in Italian Gabbanelli's favor.

The present suit was filed by American Gabbanelli in January 2002 in a federal district court in Texas and charges Italian Gabbanelli with infringing American Gabbanelli's U.S. registered trademarks. There was a change of venue to the district court in Chicago, and several months later Italian Gabbanelli, though unrepresented by counsel, wrote a letter to the district court contending that the arbitration clause in the agreement settling the original Italian litigation barred the court from exercising jurisdiction over American Gabbanelli's suit. The district judge rejected the contention after Italian Gabbanelli finally retained counsel (see below). Having filed suit itself (the Italian suit to which we referred earlier) rather than proceed in arbitration, Italian Gabbanelli can hardly be heard to complain about its opponent's having done the same thing. True, Italian Gabbanelli could not invoke arbitration before the third arbitrator was appointed. But if the reason the third arbitrator was not appointed was that American Gabbanelli's arbitrator had refused to cooperate with Italian Gabbanelli's arbitrator in picking the third arbitrator, Italian Gabbanelli could have sought relief in the Italian court for breach of the arbitration clause. It *has* sought such relief, in still another suit, but we have not been told what the ground of that suit is, or its outcome.

The issue of the effect of the arbitration clause on the present lawsuit is in any event not jurisdictional. A person who having agreed to arbitrate instead brings a

suit has broken his contract, and the breach can be pleaded as a defense to his suit. But even if the defense is sound, it no more deprives the court of jurisdiction than a defense based on any other contractual forum-selection clause would. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518-20 (1974); *Baltimore & Ohio Chicago Terminal R.R. v. Wisconsin Central Ltd.*, 154 F.3d 404, 408-09 (7th Cir. 1998); cf. *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 852-53 (7th Cir. 2002); *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 272 (3d Cir. 2004); *Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise*, 239 F.2d 689, 694 (4th Cir. 1956). This is apparent from the fact that parties to an arbitration agreement can always waive the agreement and decide to duke out their dispute in court, *Grumhaus v. Comerica Securities, Inc.*, 223 F.3d 648, 650-51 (7th Cir. 2000); *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 389-91 (7th Cir. 1995); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925-27 (3d Cir. 1992)—which in effect is what happened in this case. So not only is there no jurisdictional obstacle; there is no contractual (or for that matter any other) obstacle. Italian Gabbanelli waived its right to insist on arbitration by bringing suit upon a "further controversy" between the parties in violation of the arbitration clause in its settlement agreement with American Gabbanelli.

The letter challenging the district court's jurisdiction was sent, as we said, in July 2002. In October the court stayed further proceedings pending the outcome of the Italian suit that Italian Gabbanelli had filed earlier that year. In May 2005, with the Italian court not yet having rendered a decision, the district judge became impatient

and lifted the stay. American Gabbanelli promptly served Italian Gabbanelli with requests for admission, essentially asking it to admit liability on all the plaintiff's trademark claims. The defendant had 30 days to respond. Fed. R. Civ. Pro. Rule 36(a)(2), (3), (4). In October 2005, months later, without having responded to the requests for admission, Italian Gabbanelli finally hired a law firm and the firm entered an appearance in the case.

American Gabbanelli moved for summary judgment. After delays while the parties contested the (nonexistent) jurisdictional issue, Italian Gabbanelli filed its opposition to the motion for summary judgment in June 2007. But having missed the deadline for responding to the request for admissions it was deemed to have made the requested admissions. Fed. R. Civ. P. 36(a)(3); *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 607 (7th Cir. 2008); *Hadley v. United States*, 45 F.3d 1345, 1347-48 (9th Cir. 1995). So when the defendant moved to be permitted to withdraw the admissions and substitute affidavits contradicting them, the judge denied the motion and the grant of summary judgment followed swiftly.

Italian Gabbanelli had no excuse for ignoring its opponent's request for admissions long, long past the deadline. Though a small company, it has lawyers in Italy who could have put it in touch with an American law firm when it was sued back in 2002. And a law firm did finally make an appearance for it in October 2005—yet waited almost two years after that before moving to rescind the admissions. The excuse that the arbitration clause required the request for admissions in an American lawsuit to be in

Italian is frivolous; the defendant's initial letter, objecting to the suit, was in English. The district judge was not required to rescind the admissions, *United States v. 2204 Barbara Lane*, 960 F.2d 126, 129-30 (11th Cir. 1992), and, with the admissions thus a part of the evidentiary record the grant of summary judgment in favor of the plaintiff was inevitable.

But what about the recent Italian judgment in Italian Gabbanelli's favor? The company had tried, before the appeal was argued, to submit it directly to us, but we directed that it instead be submitted to the district judge, with a request that he make it a part of the record, as in *United States v. Ramirez*, 421 F.3d 159, 167 (2d Cir. 2005). An American court can take judicial notice of a foreign judgment, *Hilton v. Guyot*, 159 U.S. 113, 205-06 (1895); *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 411-12 (6th Cir. 2006); *United States v. Garland*, 991 F.2d 328, 332-34 (6th Cir. 1993), but in most cases (not all—see, e.g., *Crockett v. Hulick*, 542 F.3d 1183, 1188-89 n. 3 (7th Cir. 2008); *Ruvalcaba v. Chandler*, 416 F.3d 555, 563 n. 2 (7th Cir. 2005); *Dickerson v. Alabama*, 667 F.2d 1364, 1367-68 (11th Cir. 1982)) the sensible procedure is first to lodge it with the trial court, as in the *Ramirez*, *Train House*, and *Garland* cases, and that is the usual practice. See also *Ennis v. Smith*, 55 U.S. 400, 430-31 (1852); *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1188-90 (3d Cir. 1978). The significance of a foreign judgment for pending litigation depends obviously on its meaning, which will require an accurate translation if, as in this case, the judgment was rendered by a court in a non-English-speaking country. And because the United States is not a signatory

to any treaty governing recognition of foreign judgments, Alessandro Barzaghi, "Recognition and Enforcement of United States Judgments in Italy," 18 *N.Y. Int'l L. Rev.* 61, 65 (2005), the significance of the foreign judgment will depend on a variety of other considerations as well, having to do with the reliability of the foreign proceeding for determining the parties' rights. See *Restatement (Third) of Foreign Relations Law* § 482 (1987). Some of those considerations, such as adequacy of notice, are also best treated as matters of fact because their accurate determination can benefit from compliance with the rules of evidence. See Fed. R. Civ. P. 44.1; *Twohy v. First National Bank*, 758 F.2d 1185, 1192-94 (7th Cir. 1985).

Although Italian Gabbanelli did as we directed and asked the district judge to add the Italian judgment to the record, he refused. His ground was that the company was trying to get him to find facts while the case was on appeal and jurisdiction over the case had therefore shifted to the court of appeals. We could have been clearer, but our intention was to order a limited remand to give the parties an opportunity to supplement the record with the judgment (and pertinent interpretive materials), which might assist us in deciding the appeal, as in *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572, 583 (2d Cir. 1993).

No matter. Because the Italian judgment postdates the American one, it cannot be pleaded as res judicata, or, so far as we can see, do anything else to advance Italian Gabbanelli's cause. It is more likely that the American

judgment, at least once the defendant has exhausted its appellate remedies (an essential condition, as we are about to see), could be pleaded as res judicata in the Italian litigation, assuming that the Italian litigation has not yet concluded—that appellate remedies remain unexhausted. Although the parties haven't bothered to tell us anything about the Italian doctrine of res judicata, our own research reveals that the Italian doctrine (on which see Article 2909 of the Italian Civil Code; Enrico Zattoni, "Some Comparative Reflections on Issue Preclusion in Civil Cases: Collateral Estoppel and *Giudicato Sull 'Eccezione'*," 41-44 (L.L.M. thesis, Harvard Law School, Apr. 1992); and Barzaghi, *supra*, 69-70, 85-88, 95), unlike the American, does not accord res judicata effect to a judgment, whether domestic (that is, Italian) or foreign, until appellate remedies have been exhausted. *Spier v. Calzaturificio Tecnica, S.p.A.* WL 200651, at *1-2 (S.D.N.Y. Dec. 3, 1990); Barzaghi, *supra*, at 85; Andrea Bonomi, "The Italian Statute on Private International Law," 27 *Int'l J. Legal Information* 247, 266-67 (1999).

It is true that American courts apply the American doctrine of res judicata even to a foreign judgment of a nation like Italy that would not treat an American judgment the same way. *Restatement*, *supra*, § 481, comment d; *Restatement (Second) of Conflict of Laws* § 98 (1971); Richard W. Hulbert, "Some Thoughts on Judgments, Reciprocity, and the Seeming Paradox of International Commercial Arbitration," 29 *U. Pa. J. Int'l L.* 641, 642-44 (2008). And so the fact that the Italian judgment is not final in the sense of appellate remedies having been exhausted is not

important. But what *is* important is that it was rendered after the judgment of the district court.

The Italian judgment in short is a red herring in this appeal. Italian Gabbanelli's challenge to liability fails.

But it has a legitimate grievance concerning the damages that the district judge awarded—$151,200 in lost profits plus statutory damages of $500 per infringing accordion. The latter award is the focus of contention. The Lanham Act authorizes statutory damages only in cases in which the violation of the Act takes the form of using a "counterfeit" mark, § 1117(c)—"a spurious mark which is identical with, or substantially indistinguishable from, a registered mark," § 1116(d)(1)(B)(ii); see also §§ 1117, 1127—as distinct from cases in which the mark is placed on the defendant's product with the trademark owner's consent but the product is then distributed through an unauthorized channel. Louis P. Petrich, "Preliminary Injunctions and Temporary Restraining Orders in Copyright and Trademark Infringement Cases: The Trademark Counterfeiting Act," 326 *PLI/Pat* 499, 570-71 (1991). For example, a product licensed to be sold only in Europe but sold in the United States under the licensor's trademark would be a "grey market" good rather than a good sold by means of a "counterfeit" mark. *Id.* But Italian Gabbanelli placed the Gabbanelli mark on accordions made by a company that was not authorized to manufacture accordions for sale in the United States under the Gabbanelli name; this made its use of the name counterfeiting. *Idaho Potato Commission v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 722 (9th Cir. 2005).

However, statutory damages may be awarded only in cases in which compensatory damages are not awarded for the same violation. 15 U.S.C. §§ 1117(c), (d); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008); *Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1380-82 (2d Cir. 1993). It is true that if there are separate violations, the fact that they are charged in the same case does not preclude an award of compensatory damages for some of the violations and statutory damages for others as to which compensatory damages can't be ascertained or are too slight to warrant the expense of determining but in which deterrence would be served by a money judgment. Cf. *Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010-11 (9th Cir. 1994). But this is not such a case. Both the lost profits, which are compensatory damages, and the statutory damages pertain to the same accordions that Italian Gabbanelli sold in violation of American Gabbanelli's trademark rights.

A further problem with the damages award is the amount of statutory damages that can be awarded in the case of a counterfeit trademark: "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c). Per "type of goods"—not per individual item bearing the counterfeit mark. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:95 (4th ed. 2009).

The damages award must therefore be vacated. The judgment is affirmed except with respect to that award

and also the award of attorneys' fees, which the district court will have to redetermine at the conclusion of the proceedings on remand.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH INSTRUCTIONS.