NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 4, 2014[*]
Decided June 4, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-1130

| | |
|---|---|
| IRENN H. JOHNSON, | Appeal from the United States District |
| *Plaintiff–Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 12 C 141 |
| ORKIN, LLC, | |
| *Defendant–Appellee*. | Rubén Castillo, |
| | *Chief Judge*. |

**O R D E R**

Irenn Johnson appeals the district court's order compelling arbitration and dismissing his employment-discrimination suit against Orkin, LLC, his former employer. Because we conclude that arbitration agreements between Johnson and the company preclude the litigation of his claims in federal court, we affirm.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Johnson applied for a job with Orkin in early 2005. The company initially told him that he was not selected for the position but nonetheless hired him about a month later. When applying for the job Johnson signed an "Agreement to Arbitrate." That agreement requires Johnson "to abide by the Company's Dispute Resolution Policy and to arbitrate any dispute, claim, or controversy regarding or arising out of [his] application for employment (as defined by the Company's Policy, a copy of which [he] may request at any time) that may arise between [him] and the Company, its parents, subsidiaries, affiliates and any other person or entities acting as its agent." Later, when he was hired, he signed a nearly identical arbitration agreement that covered "any dispute, claim, or controversy" regarding his "employment." Both agreements state that Johnson understood "that by agreeing to arbitrate, [he] waive[s] any right to trial by judge or jury in favor of having such dispute resolved by arbitration."

Johnson signed the arbitration agreements without reading the Dispute Resolution Policy. He did not ask for a copy of the Policy before signing the agreement that came with his job application, but when he learned that he would not be hired, he asked the company for "all information used in making decisions relevant to [his] employment." Orkin furnished some documents, but it did not include a copy of the Policy, and Johnson did not object to its absence. When Orkin later offered him a job, he signed the second arbitration agreement, again without having received or read the Policy. The Policy describes the arbitration procedure. It also defines some terms in the arbitration agreements (for example, "disputes" means "claims, actions or suits") but leaves other terms, such as "claims" and "controversies," alone.

Four months after Johnson got the job, Orkin fired him, and Johnson challenged the discharge. He filed administrative charges of discrimination, which resulted in right-to-sue letters in 2011. (The nearly six years that it took for administrative closure is unexplained.) Johnson then sued Orkin in federal court. He asserted that the company first refused to hire him and then fired him because of his arrest record in violation of the Illinois Human Rights Act, *see* 775 ILCS § 5/2-103, and because of his race (African American) in violation of Illinois law, *see id.* § 5/2-102(A), and Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e-2(a). He also alleged that the company had retaliated against him for protected activity. *See id.* § 2000e-3(a); 775 ILCS § 5/6-101(A). Finally, he alleged that the arbitration agreements violated Title VII.

Orkin moved to compel arbitration and dismiss under Federal Rule of Civil Procedure 12(b)(1) on the ground that the agreements to arbitrate divested the district court of subject-matter jurisdiction. Orkin supported its motion with copies of the two

agreements and the Dispute Resolution Policy referenced in them. Johnson countered that the agreements were unenforceable because they were unconscionable, did not cover his claims, and referred to a Policy that he never received. The district court dismissed the suit, concluding that the agreements were enforceable because on their "face" they bar Johnson from litigating his claims in court. Johnson moved for reconsideration, arguing for the first time that the agreements were unenforceable for yet another reason—breach, by virtue of Orkin's failure to furnish a copy of the Policy or follow it. He also sought leave to amend his complaint to add various Orkin employees as defendants. The district court denied Johnson's motions.

Before addressing the merits of Johnson's appeal, we note as a preliminary matter that Orkin should have moved to dismiss under Rule 12(b)(3) for improper venue, not under Rule 12(b)(1) for lack of subject-matter jurisdiction. "Subject-matter jurisdiction . . . refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 81 (2009) (internal quotation marks omitted). An arbitration agreement, however, *can* be waived by the parties, so the effect of such an agreement on a lawsuit is not jurisdictional. *Gabbanelli Accordions & Imports, L.L.C., v. Gabbanelli*, 575 F.3d 693, 695 (7th Cir. 2009). An arbitration clause is simply a type of forum-selection clause, *see id.*, and a motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3). *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007). Nonetheless, the mistaken reference to subject-matter jurisdiction is immaterial. Johnson does not argue that this procedural misstep affects the outcome of the appeal, and, under Rule 12(b)(3), the district court was free to consider the parties' arbitration agreements. *See Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 809–10 (7th Cir. 2011) (explaining that court may consider materials outside the pleadings when evaluating Rule 12(b)(3) motion). We therefore proceed to the merits.

On appeal, Johnson raises two principal arguments, but both are unavailing. First, he contends that he could not have known that he was required to arbitrate because only the Dispute Resolution Policy, which the company never gave him, spells out this duty. Johnson is incorrect. The two documents that Johnson acknowledges he did read, possess, and sign both state that he must arbitrate any claims regarding his employment. On the very pages that Johnson signed, he and Orkin agree "to arbitrate any dispute, claim, or controversy regarding or arising out of" his employment and his application for employment. Agreements to arbitrate employment claims are enforceable. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). The Policy defines

some terms in the agreements (such as "disputes"), but even if we ignore the Policy entirely (because Johnson didn't receive it), the agreements that he signed, by *their* terms, require Johnson to arbitrate any "claim" or "controversy arising out of" his employment. Because Johnson's claims arise out of his employment, he must therefore arbitrate them. *See Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (explaining in context of interpreting arbitration agreement that the phrase "'arising out of' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se").

Johnson's second argument opposing arbitration, raised in his reply brief, is that by refusing to provide him a copy of the Policy and otherwise violating it, Orkin materially breached the arbitration agreements and, thus, he is not required to arbitrate. But Johnson did not present this argument to the district court until his motion for reconsideration, and "[a]rguments raised for the first time in connection with a motion for reconsideration . . . are generally deemed to be waived." *Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004). Johnson easily could have raised this argument earlier because he knew, when opposing the motion to dismiss, whether he had received a copy of the Policy, and therefore he could have argued breach then. In any case, Johnson waived this argument on appeal by raising it for the first time in his reply brief, giving Orkin no chance to respond. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 668 n.3 (7th Cir. 2013); *United States v. Roberts*, 534 F.3d 560, 568 n.5 (7th Cir. 2008).

Finally, Johnson contends that the district court should have granted him leave to amend his complaint by adding several Orkin employees as defendants. But a district court need not allow amendments that would be futile. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). Johnson's proposed amendments were futile because the arbitration agreements require him to arbitrate not only his claims against the company but also his claims against the company's agents.

AFFIRMED.