In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3498

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALEX ALEXANDER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 11 CR 50018-1 — **Frederick J. Kapala**, *Judge.*

ARGUED OCTOBER 28, 2013 — DECIDED FEBRUARY 4, 2014

Before POSNER, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* A jury found Alex Alexander
guilty of possessing marijuana with the intent to distribute,
possessing a gun though he is a felon, and possessing a gun in
furtherance of a drug crime. Alexander argues on appeal—for
the first time—that the prosecutor impermissibly vouched for
the credibility of the key government witness during his
closing argument. With the benefit of appellate hindsight, we
conclude that the prosecutor's closing argument at two points

strayed across an admittedly fine line into improper vouching, but the errors were not serious and did not deprive Alexander of a fair trial or cause his convictions. Alexander thus cannot establish the plain error that would be required to win reversal based on prosecutorial behavior not objected to at trial. We affirm the judgment of the district court.

Alexander's convictions stem from a traffic stop in Rockford, Illinois, on a February afternoon in 2011 not long after a snow storm. Rockford Police Officer Mark Honzel was on patrol that day and saw Alexander's car stopped on Blake Street next to another car, obstructing a lane of traffic. Honzel drove toward the cars, but Alexander drove away and turned down an icy, snow-filled alley. Rather than follow him down the alley, Honzel caught up with Alexander after he emerged, pulled up behind him, and turned on the squad car's lights to pull him over. Alexander did not stop immediately but began to turn onto another street. This maneuver caused him to lose control of his car and slide deep into a snow bank.

Officer Honzel walked up to the car as Alexander vainly tried to back out of the snow bank. Opening the driver's side door, Honzel was struck by the smell of "fresh raw cannabis." He told Alexander to turn the car off, and Alexander complied. Honzel then called in a drug-sniffing dog, which alerted to the presence of drugs in the car's center console. The subsequent search of the car turned up six grams of marijuana divided into several small plastic bags, $365 in cash, a digital scale, two cell phones, and a loaded gun, which was beneath the front passenger seat. Officer Honzel testified that one of the cell phones displayed a new text message inquiring about drugs: "How much for a half?" An additional $470 in cash was found

on Alexander's person. Following his arrest, Alexander was charged in federal court with possessing marijuana for distribution, 21 U.S.C. §841(a)(1), possessing a gun in connection with a drug crime, 18 U.S.C. §924(c)(1)(A), and possessing a gun as a felon, 18 U.S.C. §§922(g)(1), 924(e)(1).

At trial Alexander's defense was that he did not know the marijuana and gun were in the car, which he did not own. He did not testify or present other evidence that he was unaware of the contraband, but his lawyer sought to support this defense in his opening and closing arguments. He pointed out that Alexander is a large man who, his lawyer reasoned, would have trouble bending over to retrieve a gun from under the passenger seat and so would not stash one there. The car had a lot of things in it, including a lot of trash, but nothing that undoubtedly belonged to Alexander. The government had presented no fingerprint or DNA evidence to establish that Alexander had ever touched the gun or the drug-related items.

Alexander's lawyer argued in closing that Officer Honzel's account of his encounter with Alexander was not trustworthy. The text message Honzel claimed to have seen was not recovered from either of the seized phones. (No text messages were recovered.) Also, Officer Honzel had written in his police report that he first saw Alexander on Kent Street. He later explained (including when he testified) that he had made a mistake in writing his report and actually had first seen Alexander on Blake Street, which is one block north of Kent. Alexander's lawyer argued that the error showed Honzel's general lack of credibility regarding his encounter with Alexander. Questioning Honzel's credibility further, the lawyer asked rhetorically why he would have waited for a

drug-sniffing dog to arrive when he supposedly smelled the marijuana himself, which would have provided probable cause for the search even without the dog. The lawyer seemed to imply that Officer Honzel claimed to have smelled the marijuana himself to give the impression that Alexander must have been able to smell it too—and thus must have been aware it was there—when Alexander had not actually smelled it and did not know it was there.

The prosecutor responded in the rebuttal portion of his closing argument to Alexander's attack on Officer Honzel's credibility:

> We know that Officer Honzel had no incentive, no incentive at all, to falsely implicate the defendant in any type of crime. And we can go even one step further, that if Officer Honzel was bent on breaking the law and violating his oath of office, he could have done a lot better. I mean, if you're really going to manufacture evidence, if you're really going to lie and dishonor yourself, then why not go all the way. Why not claim that he saw the defendant holding onto that gun. Why not claim that he saw the defendant make a hand-to-hand transaction with the black Dodge, the occupant of the black Dodge. Why not claim that he saw the defendant hiding the gun underneath the front seat, if you're really going to break the law here. But he didn't say any of that because he told you the truth. Did he transpose the name of a street that was one block off? Yes. Is Mark Honzel a human being? Yes. But he was honest and humble enough to admit that to you.

Alexander's lawyer did not object to any of the prosecutor's remarks.

The jury found Alexander guilty of all three crimes. The district court determined at sentencing that Alexander was a career offender under the Sentencing Guidelines, see U.S.S.G. §4B1.1, and imposed a prison term of 390 months.

On appeal Alexander argues that the prosecutor impermissibly "vouched" for Officer Honzel's credibility. "Improper vouching is trying to bolster a witness's believability with 'evidence' that was not presented and may well not exist." *United States v. Edwards*, 581 F.3d 604, 610 (7th Cir. 2009). This understanding of improper vouching includes prosecutorial expressions of a "personal belief in the witness's truthfulness" but does not include a prosecutor's reminder to the jury "of evidence presented at the trial that tends to show that a witness was telling the truth." *Id.* at 609–10.

In evaluating such claims when a timely objection was made, we ask whether the prosecutor's statements, standing alone, were improper and if so whether they denied the defendant a fair trial. *United States v. Wolfe*, 701 F.3d 1206, 1211 (7th Cir. 2012); *United States v. Lathrop*, 634 F.3d 931, 939–40 (7th Cir. 2011). Our review is more deferential when the defendant did not object at the trial to the prosecutor's statements. In such cases, including this one, we reverse only if the error was "plain," by which we mean that it was obvious, affected the defendant's substantial rights to such an extent that he would not otherwise have been convicted, and seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Tucker*, 714 F.3d 1006, 1011–12 (7th Cir. 2013). That is a lengthy way of saying that we will not grant Alexander a new trial unless there was an error

so egregious that the district judge should have stepped in even though no objection was made.[1]

Alexander argues that the prosecutor's statements that Officer Honzel would not violate his oath or break the law were improper and led to his conviction. Indeed, prosecutors are not supposed to imply that a police officer's professional oath—as distinct from the oath as a witness—will prevent lying. See *United States v. Cornett*, 232 F.3d 570, 575–76 (7th Cir. 2000) (prosecutor's statement that "police officers take an oath to follow the law" was error because it "bolstered the credibility of the police officers by commenting on their occupational integrity," and "it is improper for a prosecutor to vouch for the credibility of witnesses by referring to facts outside the record"). The prosecutor's reference to the officer's oath of office went outside the record, as in *Cornett*, and was therefore improper.

Also improper, though the question is close, was the prosecutor's statement that Officer Honzel had "no incentive, no incentive at all, to falsely implicate the defendant in any type of crime." In *Edwards*, we concluded that a prosecutor's similar statement (in the form of a rhetorical question) about an officer's lack of motive to testify falsely—"what possible reason does he have to risk his career?"—was improper vouching, though it proved to be harmless. 581 F.3d at 610–11. The question "implied that the prosecutor had an undisclosed reason to believe that the consequences if the officer lied would be sufficiently grave to guarantee that he would testify truthfully." *Id.*; *United States v. Badger*, 983 F.2d 1443, 1451 (7th

---

[1] If there has been a change in the law after trial but before appeal, an appellate court can conclude that an error is "plain" even if it was not understood to be an error at all at the time of trial. See generally *Henderson v. United States*, —U.S.—, 133 S. Ct. 1121 (2013).

Cir. 1993) (improper to ask jury whether agent would risk job, reputation, and pension to lie about defendant where no evidence was offered on those topics).

Since no evidence had been presented on the question in this case, the prosecutor's statement that Officer Honzel had no incentive to lie similarly implied undisclosed knowledge that Honzel had every reason to tell the truth, particularly when added to the prosecutor's assertion that Honzel would "dishonor" himself by lying. And police officers—who are engaged in "the often competitive enterprise of ferreting out crime," *Maryland v. King*,—U.S.—, 133 S. Ct. 1958, 1970 (2013) (internal citations omitted)—may sometimes have an incentive to be untruthful or to shade the facts in pursuit of a conviction.

The line here is admittedly a fine one that may easily be overlooked by the prosecutor, defense counsel, and judge in the pressure of extemporaneous speeches to the jury. On one hand, the prosecutor may point out the absence of specific evidence of a motive for the officer to lie, but on the other hand, the prosecutor may not imply without evidence that the officer has special reasons to tell the truth. Under the reasoning of *Edwards*, the prosecutor's statement in this case, which implied without reference to admitted evidence that Officer Honzel would best serve his own interests by telling the truth, was improper. The prosecutor's statement bolstered Honzel's "believability with 'evidence' that was not presented and may well not exist." *Edwards*, 581 F.3d at 610. But the fact that the line is so fine—the difference between "Officer Honzel had no reason to lie" and "you have heard no evidence that Officer Honzel had any reason to lie"—emphasizes the need for a timely objection.

We do not see a problem, however, with the argument that, if Honzel were going to lie, he would have done so on a larger, more persuasive scale. It amounted to an appeal to jurors'

common sense, one they surely were able to evaluate for themselves. Nor do we have a problem with the prosecutor's statement that Honzel did not tell a more elaborate story "because he told you the truth." A prosecutor may properly comment on the credibility of a witness so long as the comment reflects reasonable inferences from the evidence rather than personal opinion. *United States v. Nunez*, 532 F.3d 645, 654 (7th Cir. 2008); *United States v. McKee*, 389 F.3d 697, 699 (7th Cir. 2004); *United States v. Morgan*, 113 F.3d 85, 89 (7th Cir. 1997). In context, the prosecutor's comment here was framed not as personal opinion but as fair comment on the evidence.

Because there was no objection here to the two comments that went a little over the line, we next ask whether the trial was unfair and whether it was so unfair that Alexander would have been acquitted but for the error. *Tucker*, 714 F.3d at 1011–12; *Wolfe*, 701 F.3d at 1211. Multiple factors are relevant to this inquiry, including the seriousness of the prosecutor's misconduct, whether the jury was instructed to disregard arguments not supported by evidence, whether the defense had an opportunity to respond to the statements, whether the defense "invited" the comments, and the strength of the evidence supporting the conviction. See *Darden v. Wainwright*, 477 U.S. 168, 181–82 (1986); *Wolfe*, 701 F.3d at 1211. The strength of the evidence against the defendant is often decisive. See *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000) (the "most important [factor] is the weight of the evidence against the defendant"); *United States v. Morgan*, 113 F.3d 85, 90 (7th Cir. 1997) (the "weight of the evidence is generally the most important consideration"). This is even more true when reviewing for plain error since an improper statement's effect on the outcome of the trial is what matters.

The government argues in part that the prosecutor's statements did not deprive Alexander of a fair trial because his

lawyer invited the statements by attacking Officer Honzel's credibility. Alexander responds that he was questioning only Officer Honzel's perceptive powers and memory—not his honesty—and so did not invite the response. The "invited response" concept is part of a broader requirement that, when assessing the prejudicial effect of a prosecutor's improper statements, courts consider the comments in the context of the whole trial, accounting for any mitigating circumstances such as improper statements from the defense that might have disposed the jury to favor the defendant's position. *Darden*, 477 U.S. at 182; *United States v. Young*, 470 U.S. 1, 11–14 (1985). To conclude that a prosecutor's response was invited is not to condone it. *Darden*, 477 U.S. at 182 (The "idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole."); *Young*, 470 U.S. at 11 ("Clearly two improper arguments—two apparent wrongs—do not make for a right result."); *United States v. Mazzone*, 782 F.2d 757 (7th Cir. 1986) ("Properly understood [the invited response] doctrine does not condone the prosecutor's descending to the level of defense counsel or enact the proposition that two wrongs make a right; it merely recognizes that the impact on the defendant from the prosecutor's misbehavior may be less if the defendant's counsel aroused the jury against the prosecutor."). The correct response to a defense attorney's improper argument is a timely objection, not in-kind retaliation.

Questioning an officer's honesty is *not* sufficient to invite improper vouching by the prosecutor. Nevertheless, the prosecutor's slips across the line here did not deny Alexander a fair trial and certainly did not amount to plain error. The prosecutor's slips were mild, and as the government points out, the undisputed evidence against Alexander was strong. He was found alone in a car that contained marijuana pack-

aged for sale, a loaded gun, multiple cell phones, and lots of cash. Officer Honzel's inconsequential use of the wrong street name in his report was not likely to make the jury disbelieve his testimony that he smelled marijuana in Alexander's car. In short, the prosecutor's improper vouching for Honzel's honesty was not seriously prejudicial. We are confident Alexander would have been convicted anyway, and we find no plain error.

The judgment of the district court is AFFIRMED.