NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 19, 2015[*]
Decided March 20, 2015

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-2823

| | |
|---|---|
| TODD R. LONDON, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 13-C-426 |
| | |
| MARC CLEMENTS, | William C. Griesbach, |
| *Respondent-Appellee*. | *Chief Judge*. |

**O R D E R**

Todd London, a Wisconsin prisoner, contends in this appeal from the denial of his petition for a writ of habeas corpus that he was denied the effective assistance of counsel and convicted on the basis of a constitutionally insufficient quantum of evidence. We disagree, and affirm the denial of London's petition.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

In a series of three compositions produced for her eighth and ninth grade English classes, London's daughter, M.L., alluded to instances in which he had sexually assaulted her and physically abused both her and her stepmother. The first two essays involved the same incident, and prompted the girl's teacher to contact child protective services. A social worker interviewed M.L. shortly thereafter, but during that interview she denied that any abuse had occurred. The same social worker interviewed the girl a few months later, and this time she divulged that London had once groped her breasts and crotch and struck her across the face. M.L. wrote the third essay following this interview, and implied that London had sexually abused her at least one other time. Eventually she revealed that London had raped her that time after she tried to protect her stepmother against London's physical assault. (Testimony at trial suggests that London was upset about advances another man had made towards the stepmother at a bar.)

The State of Wisconsin charged London with two counts of sexual assault of a child. *See* WIS. STAT. § 948.02. The trial did not occur until M.L. had entered the tenth grade, and by that time her stepmother had died in a car accident. The trial, therefore, was a credibility contest between the girl and London, the only living eyewitnesses. M.L.'s writings were admitted into evidence (though at the time not published to the jury), and she repeated what she had told the social worker and the police. The prosecution also called the social worker, a police officer, and M.L.'s uncle and older teenage brother. All but the uncle recounted her anxious demeanor when she had revealed the abuse. The uncle—London's brother—informed the jury that his niece, a normally outgoing child, had become distrustful and withdrawn about the time the sexual assaults occurred.

Defense counsel, in attacking M.L.'s credibility, cross-examined the social worker about the girl's inconsistent stories in different interviews. The lawyer also elicited testimony from London's parents and a sister, all New York residents, who denied seeing cuts or bruises on the girl or her stepmother, or observing unusual behavior by M.L. when the girl and her stepmother visited briefly the day after the rape. The prosecutor asked London's mother and sister if they had confronted him about the sexual assault charges. Both said no, and the sister added that she had hoped that ignoring the case would make it go away, saying she did not "want to know."

After the close of evidence, the parties debated whether M.L.'s essays should be sent to the jury room. The judge sided with the prosecution. M.L.'s writings had been

referenced "incompletely and in pieces," the judge said, and the jury should be able to view them as a whole.

During closing argument the prosecutor decried defense counsel's strategy of picking nits in M.L.'s testimony. He asked rhetorically whether the jurors believed that the emotion she and her brother had displayed on the witness stand was in service of a lie, and then answered: "Nope. There's no way that was fake." The threat of physical abuse, the prosecutor suggested, could explain M.L.'s hesitance to come forward. The prosecutor also alluded to M.L.'s testimony that the rape had occurred after London, enraged by the bar incident, blamed and viciously beat her stepmother: "Do you really think . . . all it was was an, 'I didn't appreciate you doing that?' No way. I don't buy that for a minute. I bet she felt his wrath for a long time." Confronting the testimony of London's parents and sister, the prosecutor argued, "I'll be frank with you, I'm not sure they would have said if they did see anything" because, he noted, they had turned a blind eye to the possibility that London raped his daughter. "Do you honestly think," he asked, that the girl "is lying about this?" Defense counsel retorted that the charges rested on the "unsupported, unreliable, unbelievable" words of a 15-year-old whose testimony could not satisfy the prosecution's burden of proof. The girl, defense counsel told the jury, "is not believable beyond a reasonable doubt. . . . She's lying."

After the jury found London guilty on both counts, the court sentenced him to a total of 20 years' imprisonment and 10 years' extended supervision. With new counsel London filed a posttrial motion, *see* WIS. STAT. § 974.02, arguing that trial counsel had been ineffective under a theory not relevant here. The trial court denied that motion, and London then proceeded with his direct appeal, pro se. He principally contended that the prosecution had not presented sufficient evidence. The appellate court affirmed his convictions, and the Wisconsin Supreme Court denied further review.

London, again pro se, then filed a collateral challenge in state court, *see* WIS. STAT. § 974.06, claiming that his second lawyer should have argued in the § 974.02 posttrial motion that trial counsel was deficient in not objecting to the prosecutor's closing argument. The second lawyer also should have argued in that motion, said London, that it was error to send M.L.'s essays to the jury room. Regarding the first of these contentions, London argued that trial counsel should have objected to the prosecutor's assertions that London's wife would have "felt his wrath" following the bar incident, that the prosecutor did not think M.L. was lying, and that the prosecutor doubted if London's parents or sister would have told authorities or the jury about witnessing signs of abuse.

The trial and appellate courts denied London's collateral challenge, and again the Wisconsin Supreme Court denied review. The appellate court, the last state court to address London's theories of ineffective assistance, rejected the first theory with the explanation that commenting about London's "wrath" had been permissible, and that vouching for M.L.'s credibility, although improper, had been invited by defense counsel. The appellate court said nothing, however, about the prosecutor's disparagement of London's parents and sister. The court went on to conclude that objecting to the prosecutor's closing argument would have been pointless, and thus the second lawyer's decision to omit this theory from the posttrial motion could not have been deficient. As for London's second theory concerning M.L.'s essays, the appellate court rejected this theory of ineffective assistance for the reason that this contention could have been made by London in his pro se direct appeal, so he could not fault his second lawyer for omitting it from the posttrial motion. Moreover, the court added, sending the essays to the jury was not an abuse of discretion.

London then petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, reprising his claims of insufficient evidence and ineffective assistance. The district judge concluded that the state appellate court had reasonably applied federal law in rejecting London's challenge to the sufficiency of the evidence. And London's ineffectiveness claim failed, the district judge continued, because the state appellate court's application of federal law to his theory about the prosecutor's argument was not unreasonable, and his theory about M.L.'s essays going with the jury during deliberations concerned only state law. Nevertheless, the district judge certified each question for appeal.

We can quickly dispense with the claim of insufficient evidence. The Due Process Clause requires sufficient evidence, when viewed in the light most favorable to the prosecution, to enable a rational trier of fact to find the essential elements of the charged crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Review under § 2254 involves a double dose of deference: Federal courts defer to the state courts, which in turn defer to the jury. *See Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam). The state appellate court concluded that M.L.'s testimony alone sufficed to satisfy the *Jackson* standard. We cannot say that conclusion was unreasonable. *See Jones v. Butler*, No. 14-1638, slip op. at 12 (7th Cir. Feb. 3, 2015); *McFowler v. Jaimet*, 349 F.3d 436, 456–57 (7th Cir. 2003).

That leaves for analysis the performance of London's attorneys. In order to be constitutionally ineffective, a lawyer's performance must have fallen below an objective standard of reasonableness and prejudiced the defendant. *See Strickland v. Washington*,

466 U.S. 668, 687–88, 692 (1984). And because London complains about a state conviction, § 2254(d) requires that he demonstrate not only constitutionally deficient performance, but also that the state appellate court's application of *Strickland* was unreasonable. *See Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).

As a starting point we might question London's premise that the Sixth Amendment guarantees a right to counsel in presenting a posttrial motion under § 974.02, since the statute characterizes the remedy as "postconviction," and § 2254 bars relief on the basis of poor performance by counsel in "postconviction proceedings." 28 U.S.C. § 2254(*i*). We have raised this question previously, *see Huusko v. Jenkins*, 556 F.3d 633, 635–36 (7th Cir. 2009), but more recently—as advocated by Wisconsin—we have understood a § 974.02 motion to be a step toward a defendant's direct appeal, *see Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014). And for a direct appeal the assistance of counsel is constitutionally guaranteed. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *see State v. Romero-Georgana*, 849 N.W.2d 668, 678–79 (Wis. 2014) (discussing standards for analyzing claim of ineffective assistance on § 974.02 motion).

The district court certified both theories of ineffective assistance, but the second is frivolous. London continues to insist that his second lawyer should have argued in the § 974.02 posttrial motion that it was error to send M.L.'s essays to the jury room during jury deliberations. Yet London's trial counsel had objected to this decision, so the claim was preserved for direct appeal without any need to include it in the § 974.02 motion. *See State v. Hines*, 496 N.W.2d 720, 724 (Wis. Ct. App. 1993). And as the state appellate court recognized, this is the fatal flaw in London's theory, since it was *London*, not his second lawyer, who handled the direct appeal and decided what claims to raise. A pro se litigant, having waived the right to counsel, cannot complain that he received ineffective assistance of counsel. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

What remains, then, is London's theory that his second lawyer had dropped the ball in not objecting to—in London's view—obvious prosecutorial misconduct. The district court concluded that London is not entitled to relief because the state appellate court reasonably applied *Darden v. Wainwright*, 477 U.S. 168 (1986), which represents clearly established federal law on prosecutorial misconduct. *See Ellison v. Acevedo*, 593 F.3d 625, 635 (7th Cir. 2010); *Ruvalcaba v. Chandler*, 416 F.3d 555, 565 (7th Cir. 2005). But London's claim is ineffective assistance, not prosecutorial misconduct, so the right question is whether the state court reasonably applied *Strickland*, not *Darden* or other federal law. *Darden* remains relevant, of course, to the question of the lawyer's performance, *see Campbell v. Smith*, 770 F.3d 540, 547 (7th Cir. 2014), though the district

court's exclusive focus on *Darden* (a case about federal law) overlooks that an error predicated on state law also can render counsel's performance deficient, *see Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013). At all events we agree with the district court's bottom-line conclusion.

The state appellate court's failure to discuss each of the prosecutor's challenged statements arguably could lessen our deference to that court's application of *Strickland*. *See Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014); *Brady v. Pfister*, 711 F.3d 818, 824– 26 (7th Cir. 2013). But London is not entitled to relief no matter how generous our standard of review. The fundamental defect in his theory that the prosecutor's closing argument should have prompted an objection from trial counsel (and thus a § 974.02 claim) is that each challenged statement is grounded in the evidence. Inferences drawn from the evidence, including inferences about witness credibility, are fair game for closing argument. *See United States v. Alexander*, 741 F.3d 866, 871 (7th Cir. 2014); *Rodriguez v. Scillia*, 193 F.3d 913, 919 (7th Cir. 1999). The prosecutor's statements regarding the credibility of M.L. and of members of London's extended family do appear, on their face, to reflect the prosecutor's personal opinion. And it is well-settled that a prosecutor may not express his personal belief in a witness's credibility. *See United States v. Young*, 470 U.S. 1, 17 (1985). But each statement also was prefaced by reference to the testimony the different witnesses provided. For instance, the prosecutor's statement about the family's silence in the face of abuse was drawn from the admissions of London's mother and sister that they had not confronted him about the charges, and his sister's further admission that she had ignored the criminal case because she did not want to know. Given that context, the prosecutor's argument was little more than an appeal to common sense, a tack we have characterized as "a fair comment on the evidence." *Alexander*, 741 F.3d at 871.

Moreover this was, as we have said, a credibility contest. The prosecution could not obtain a conviction unless the jury concluded that its witnesses were believable beyond a reasonable doubt. Though perhaps inartful, the statements London now finds objectionable are, in context, simply an argument that those witnesses are more worthy of belief than London's. And no body of law prevents a prosecutor from arguing in favor of a conviction. *See Ellison*, 593 F.3d at 638; *United States v. Auerbach*, 913 F.2d 407, 418 (7th Cir. 1990). Since any objection on the part of trial counsel would have been meritless, no court could fault either trial counsel for failing to lodge London's

proposed objection or successor counsel for not challenging this aspect of trial counsel's performance. *See Allen v. Chandler*, 555 F.3d 596, 603 (7th Cir. 2009); *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004).

AFFIRMED.