In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2158

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANASTACIA V. MACLIN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:16-cr-00179-PPS-JEM-1 — **Philip P. Simon**, *Judge.*

ARGUED DECEMBER 4, 2018 — DECIDED FEBRUARY 7, 2019

Before BAUER, KANNE, and BRENNAN, *Circuit Judges*.

BAUER, *Circuit Judge.* After a jury found Anastacia Vann
Maclin guilty of two counts of Medicaid theft she was sen-
tenced to 15 months' imprisonment. Maclin embezzled funds
from Dr. Farzana Khan's medical practice after being hired to
handle its electronic billing. Maclin raises two issues on appeal.
First, is whether a comment by a prospective juror ("Prospec-

tive Juror No. 11") that Dr. Khan had a "home for autism" required voir dire to be restarted with a new jury panel. Second, is whether the district court properly applied a vulnerable victim sentence enhancement based on Dr. Khan's computer illiteracy. For the following reasons, we affirm.

## I. BACKGROUND

In January 2015, Dr. Khan hired Maclin to handle the business side of Khan's medical practice, Iliana Psychiatric Associates ("Iliana"). In April 2015, Maclin used Dr. Khan's username and password to log into the Medicaid system to redirect Iliana's Medicaid reimbursements from Dr. Khan's Chase business account to Maclin's personal account at Centier Bank, and changed the reimbursement method from paper checks to electronic fund transfers. Maclin also enrolled Iliana in Medicaid's electronic incentive program, against the wishes of Dr. Khan and without her knowledge, and caused a one-time bonus of $21,250 intended for healthcare providers who digitized their paperwork to be deposited in Maclin's personal account. In total, more than $80,000 was deposited into Maclin's account from April 2015 through July 2016.

Iliana's tax preparer noticed the missing funds and informed Dr. Khan. With the help of another employee, Angela Ruiz, Dr. Khan reached out to Medicaid to investigate. Since the user information had been changed, it took Dr. Khan and Ruiz several days to unlock the Medicaid account and discover that the money had been diverted to Maclin's personal account. Dr. Khan fired Maclin and filed a police report. A grand jury returned a two-count indictment against Maclin for

stealing Medicaid reimbursements and the incentive check in violation of 18 U.S.C. § 669.

Before trial, Maclin filed a motion *in limine* to preclude the government, or any of its witnesses, from mentioning that Dr. Khan had an adult child with severe autism. The district court granted the motion in part, and directed the government to "sanitize" Dr. Khan's family circumstances to avoid drawing particular attention to her autistic son.

During voir dire prospective jurors were asked whether they knew any of the witnesses. The witness list included Dr. Khan but did not indicate she was the victim in the case. Ten jurors were chosen after each declared under oath that they could be impartial and decide the case on the evidence presented. Prospective Juror No. 11 stated that she knew Dr. Khan because she worked as the administrator of "planning and building" in Schererville. Prospective Juror No. 11 stated that she "worked with [Dr. Khan] on developing her property. She has a home for autism." Prospective Juror No. 11 was excused from the jury because she knew Dr. Khan. Two more jurors were selected; both swore they could be impartial.

At the end of voir dire, Maclin filed a motion for a mistrial. Maclin sought to restart voir dire with a new jury panel, arguing that Prospective Juror No. 11's statement was prejudicial in light of the ruling on the motion *in limine*. The district court denied the motion and offered a curative instruction, which Maclin's defense counsel declined.

Prior to the trial the jury was instructed that their "first duty is to decide the facts from the evidence that you see and hear here in court" without letting "sympathy, prejudice, fear,

or public opinion influence you in any way." The court told the jury to base their verdict "exclusively on the law as I give it to you and the evidence that was presented in the courtroom." The court gave similar instructions to the jury a second time, after closing arguments, stating that "evidence includes only what the witnesses said when they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to … . Nothing else is evidence."

The jury found Maclin guilty of both counts. Maclin again moved for a mistrial, making the same arguments as her earlier motion. The district court denied the motion concluding that "the fleeting remark, with little in the way of context or explanation, could not possibly have had created such sympathy for Dr. Kahn as to have a prejudicial effect on the jury's verdict finding Maclin guilty." *United States v. Maclin*, 2017 U.S. Dist. LEXIS 208125, at *4 (N.D. Ind. Dec. 19, 2017).

The Presentence Report recommended Maclin receive a two-level sentencing enhancement because Dr. Khan was a "vulnerable victim" on the basis of her computer illiteracy. At the sentencing hearing Dr. Khan testified that she did not understand how to use a computer, did not bank electronically, did not send her own e-mails, and did not even use ATMs. Dr. Khan further testified that Maclin knew of her complete inability to use computers. Maclin objected to the enhancement arguing that Dr. Khan was not vulnerable.

The district court overruled the objection and applied the enhancement. The district court stated it had never seen anyone as technologically unsophisticated as Dr. Khan, and concluded that this made her especially vulnerable to Maclin's

computer-based theft scheme. The court noted that the enhancement resulted in an advisory sentence of 15 to 21 months, which overlapped with the 10 to 16 month range that would have been recommended without the enhancement. The court found that Maclin had preyed on Dr. Khan and showed no contrition. The court also considered the fact that Maclin was still paying restitution for a prior offense where she did "basically, the same thing to another physician." The court imposed a 15-month sentence, noting that the sentence would have been the same without the vulnerable victim enhancement because "15 months captures about correctly the gravity of the case."

## II. ANALYSIS

Rule 33 authorizes the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The applicable standard under Rule 33 requires a new trial "only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict." *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016). We review the district court's decision to deny motions for a mistrial and motions for a new trial for abuses of discretion. *See United States v. Lawrence*, 788 F.3d 234, 243 (7th Cir. 2015); *Flournoy*, 842 F.3d at 528. "Each case must turn on its special facts, and in each case the crucial factor is the degree and pervasiveness of the prejudicial influence possibly resulting from the jury's exposure to the extraneous material." *United States v. Wiesner*, 789 F.2d 1264, 1269 (7th Cir. 1986) (citing *United States v. Weisman*, 736 F.2d 421, 424 (7th Cir. 1984)).

Maclin relies extensively on *Mach v. Stewart*, 137 F.3d 630 (9th Cir. 1998). In *Mach*, the defendant was on trial for sexually abusing a child. *Id.* at 631–32. The potential juror, a social worker, stated that every time her clients alleged sexual assault, the allegations were later confirmed to be true. *Id.* at 632. The juror repeated the statement several times, and also stated that she had taken psychology courses and worked closely with psychologists and psychiatrists. *Id.* The Ninth Circuit reversed the verdict based on the "nature of [the] statements, the certainty with which they were delivered, the years of experience that led to them, and the number of times that they were repeated" and presumed "that at least one juror was tainted and entered into jury deliberations with the conviction that children simply never lie about being sexually abused." *Id.* at 633.

This case could not be more different than *Mach*. Prospective Juror No. 11 provided a vague factual statement about Dr. Khan, not an opinion about the trustworthiness of any witness. Prospective Juror No. 11's statement did not implicate Maclin's guilt and was entirely unrelated to the crimes Maclin was charged with. The statement was neither material to an issue in the case, nor was it inflammatory in any way. It is implausible that the statement could have had a prejudicial effect on the jury's verdict. The district court was not required under these circumstances to empanel a new venire. It was also not required to question each impaneled juror regarding their ability to be impartial given the nature of the statement and the clear jury instructions given prior to trial and after the closing arguments.

As to the vulnerable victim enhancement, the court found that Dr. Khan was financially and technologically unsophisticated. This made her particularly vulnerable to Maclin's scheme to use the electronic Medicaid billing system to divert funds to her own personal account. Maclin argues that the record does not support the district court's conclusion that Dr. Khan was financially unsophisticated, and that Dr. Khan was able to overcome any technological illiteracy by meeting with people at her bank directly. Maclin relies heavily on *United States v. Esterman*, 324 F.3d 565, 573–74 (7th Cir. 2003). There, this court found it was a clear error to apply a vulnerable victim enhancement based solely on a victim's limited English proficiency, where the victim was financially sophisticated and monitored his finances through interpreters.

A vulnerable victim is defined by the Guidelines as "someone who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1. We review the district court's application of the vulnerable victim enhancement for clear error. Whether a victim is vulnerable "is the type of fact which the trial court is uniquely well-positioned to assess because the trial judge can observe the demeanor of the defendant and witnesses and has an opportunity to review and analyze each of the documents and exhibits and hear the testimony while observing the mental, physical, and emotional states of the victims in order to assist him with assessing the damages inflicted upon them." *United States v. Christiansen*, 594 F.3d 571, 574 (7th Cir. 2010)(internal citations omitted). There must be "some link between the vulnerability and the characteristic in question." *United States v. Lewis*, 842 F.3d 467, 476

(7th Cir. 2016) (vulnerable victim enhancement warranted where defendant abused trust of victims who "lacked basic computer skills"); see also *United States v. Sullivan*, 765 F.3d 712, 717 (7th Cir. 2014) (evidence supported enhancement because it showed the defendants targeted victims who were elderly and financially unsophisticated); *United States v. Parolin*, 239 F.3d 922 (7th Cir. 2001) (vulnerable victim enhancement appropriate due to defendant's knowledge of victims' lack of financial sophistication).

The district court found that Dr. Khan was remarkably computer illiterate. She did not "do e-mail" and her attempts to access computer systems routinely resulted in failure because she inadvertently triggered security mechanisms. The court noted that Dr. Khan "totally entrusted this to Ms. Maclin, the operation of the financial side of her business, and Ms. Maclin knew that." Maclin used that knowledge to defraud Dr. Khan using the electronic billing system. The district court noted that Dr. Khan was intelligent, and that it was a "close call" but concluded that "literally—in 15 years, I have never seen somebody so technologically unsophisticated as this victim to the point where she literally has never used e-mail even. She doesn't have the ability to check her accounts."

This Court held in *Esterman* that it was clear error by the district court to "consider[] "the linguistic factor in isolation." *Esterman*, 324 F.3d at 573–74. Esterman argued that the district court improperly ignored the victim's "sophistication as a businessperson, his ability to communicate with the bank through an interpreter, his ability to dispatch deputies, and his familiarity with the legal system as evidenced by his filing of

criminal and civil complaints." *Id*. Unlike in *Esterman*, the district court here considered the mitigating factor that Dr. Khan was generally an intelligent person, but found she was so technologically illiterate that it made her particularly vulnerable to electronic billing fraud. While Dr. Khan could meet in person at the bank to go over her accounts, had she been able to check her accounts electronically she would have discovered the fraud much sooner.

Additionally, the district court noted the 15-month sentence was within Guidelines range whether or not the vulnerable victim enhancement was applied, and declared 15 months would be the sentence "irrespective of how that decision fell out." The court stated that the enhancement "wouldn't have changed my judgment on the case one way or the other" because "15 months captures about correctly the gravity of the case" considering Maclin stole a substantial sum of money from Dr. Khan while still paying restitution for an almost identical crime.

"A district court facing a tricky but technical issue under the Guidelines may exercise its discretion under section 3553(a) and may spell out on the record whether and to what extent the resolution of the guideline issue affected the court's final decision on the sentence." *United States v. Snyder*, 865 F.3d 490, 500 (7th Cir. 2017) (citing *United States v. Lopez*, 634 F.3d 948, 954 (7th Cir. 2011)); *see, e.g., United States v. Sanner*, 565 F.3d 400, 406 (7th Cir. 2009) (affirming an above-guideline sentence without regard for the correct resolution of guideline issue); *United States v. Abbas*, 560 F.3d 660, 666–67 (7th Cir. 2009) (holding a guideline error was harmless based on judge's explanation of alternative basis for same sentence). We find no

error in the district court's application of the vulnerable victim enhancement and, regardless, any error would have been harmless.

## III.  CONCLUSION

The district court's denial of the motions for mistrial, and the district court's sentencing, are hereby AFFIRMED.