In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3480

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ADOLPH COMMON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-CR-893 — **Robert W. Gettleman**, *Judge.*

ARGUED JANUARY 14, 2016 — DECIDED APRIL 4, 2016

Before FLAUM and RIPPLE, *Circuit Judges*, and PETERSON, *District Judge*.[*]

FLAUM, *Circuit Judge*. In 2014, Adolph Common was convicted of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). The arresting officers claim that they saw a gun fall out of Common's pants and that Common

---

[*] Of the Western District of Wisconsin, sitting by designation.

confessed to possessing the gun. Common denies having the gun and making the confession. He alleges that the officers planted the gun on him and failed to provide *Miranda* warnings. The district court denied Common's motion to suppress his alleged confession. After two mistrials, a jury convicted Common. Common appeals, challenging the denial of his motion to suppress, the admission of the testimony of a fingerprint examiner, and the denial of his motion for a new trial based on claims of prosecutorial misconduct. We affirm.

## I. Background

### A.  Factual Background

On June 24, 2011, Chicago Police Officers Thomas Hanrahan, John Murphy, James McNichols, and Patrick Kelly were patrolling a high-crime area of the city. The officers saw Common walking on the street. His left hand was clenched into a fist, which made the officers suspect he was concealing something. The officers allege that they also noticed a bulge near Common's waistband, which made them suspect he was concealing a gun.

Hanrahan called out to Common, who dropped several small plastic bags of crack cocaine from his left hand onto the ground. Common began to run away, and Murphy, Kelly, and McNichols chased him. Common ran toward his residence, tripping on his porch stairs. From this point forward, the government and Common allege different versions of the facts.

#### 1.  *Government's Case-in-Chief*

The government alleges that a gun fell from Common's pants when he tripped. Murphy and Kelly handcuffed Common, while McNichols recovered the gun. The government contends that Common was cooperative, did not ask what he

did wrong, and did not express surprise about his arrest. The officers did not see or speak with anyone else during the arrest. Murphy placed Common in the police car and gave him *Miranda* warnings. Hanrahan says he witnessed the warnings. They left the scene ten minutes after first spotting Common.

Upon arriving at the police station, consistent with their regular practice, Hanrahan and Murphy performed a pat-down search and handcuffed Common. The government alleges that Murphy again advised Common of his *Miranda* rights, and Hanrahan again witnessed the warnings.[1]

The government contends that Murphy, in the presence of Hanrahan, asked Common why he had a gun. Common responded, "I'm making sure nothing happens to me out there. They're shooting." The officers did not ask Common to write, sign, or review this alleged confession. Murphy and Hanrahan then went to prepare arrest reports. Hanrahan wrote that Common made a statement to Murphy about having the gun for protection. Hanrahan did not write that he witnessed the *Miranda* warnings or that he was present when Hanrahan confessed to Murphy.

### 2. *Common's Defense*

Common admitted to possessing a personal use amount of cocaine but denied having a gun. According to Common, after the officers handcuffed him, one of them said, "You know what we want" and "Give us a gun or you'll get a gun." Common interpreted this to mean that the officers would

---

[1] Murphy later explained that he gave Common his *Miranda* warnings a second time because they had changed locations and some time had passed. He said he wanted to "make sure it [was] done right."

falsely charge him with possessing a gun if he did not assist them in finding an illegally possessed gun.

Common alleges that six witnesses were present outside of his residence when the officers arrived and arrested him: Common's mother, stepfather, brother, girlfriend, neighbor, and a friend of Common's brother. At trial, each witness testified that he or she spoke with, or saw another witness speak with, the officers. Several witnesses testified that Common's mother asked the officers why they were arresting her son. The officers allegedly responded that the arrest was for drugs and did not mention a gun.

Common contends that when the officers were walking him to the door of the police station, one of the officers said, "We forgot to search the car." The officer returned to the car and said, "Oh shit. We got a 143." The officer asked Common what he had in the car. Common told him, "I ain't have nothing in the car.… What you found is what you found."

In the station, Common inquired about the charge. He alleges that an officer responded that the charge had not yet been decided. Common claims that he did not learn that he was being charged with unlawful possession of a firearm until he was transported to jail and that he did not know about the alleged confession until his public defender told him about it.

### B.  Procedural Background

On November 15, 2012, a federal grand jury indicted Common for unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). On August 8, 2013, Common filed a motion to suppress his alleged confession, arguing that the officers failed to *Mirandize* him. However, Common neither

denied possessing a gun nor accused the officers of other mis-conduct.

Common testified at a suppression hearing on November 5. For the first time, Common denied having a gun and making the confession. He alleged that six witnesses were present for the arrest but did not call them to testify. The government called Hanrahan and Murphy, who testified that they *Miran-dized* Common twice and that Common admitted to having the gun for protection. They denied that any officers threat-ened Common or planted evidence. The district court denied the motion to suppress, finding that Hanrahan and Murphy's testimony was credible while Common's was not.

Common's first trial commenced on November 18, 2013. Hanrahan, Murphy, and McNichols testified on behalf of the government. Chicago Police Officer and Evidence Technician Matthew Savage testified for the government about his exam-ination of the gun for fingerprints and the infrequency with which prints are recovered from firearms. Common objected on relevance grounds to the statistical evidence regarding the frequency of recovering prints from firearms. The district court overruled the objection. Common called the six defense witnesses. The jury could not reach a unanimous verdict, and the court declared a mistrial.

Prior to the second trial, Common filed a motion to recon-sider his motion to suppress his alleged confession. Common argued that his story was now corroborated by the testimony of the six witnesses he presented at the first trial. The district court denied the motion. Common also filed a motion *in limine* to exclude any reference by Savage "to the statistical percentage of guns examined for latent fingerprints in which

latent fingerprints are found." After a hearing, the court denied the motion. On February 4, 2014, the second trial began. The parties called the same witnesses as in the first trial. The jury could not reach a unanimous verdict, resulting in another mistrial.

Before the third trial, the district court ordered that "all prior motions by either side will stand as will the same previous rulings." The third trial began on April 7, 2014 with the same witnesses. Hanrahan, Murphy, and McNichols described Common's arrest, the recovery of the firearm and drugs, and Common's confession. Savage testified about his credentials as an evidence technician, fingerprint-recovery generally, and his examination of the firearm in this case. He stated that he did not recover any fingerprints from the gun and explained why it is difficult to recover fingerprints from firearms. Savage testified that it was "extremely uncommon" to recover prints from firearms and that he had only recovered prints from 30 firearms after examining more than 800 throughout career. The jury returned a guilty verdict.

On June 13, Common filed a motion for acquittal, which the district court denied. Common also filed a motion for a new trial, based in part on his argument that the government committed prosecutorial misconduct by distorting the burden of proof and misstating the evidence during closing arguments. After reviewing the transcript of closing arguments, the court denied the motion for a new trial.

On October 28, the district court found that Common qualified for sentencing as an armed career criminal pursuant to 18 U.S.C. § 924(e). It sentenced Common to the mandatory minimum of 180 months in prison, followed by a three-year term of supervised release.

## II. Discussion

On appeal, Common argues that the district court erred by denying his motion to suppress his alleged confession, admitting the testimony of the government's fingerprint technician, and denying his motion for a new trial based on claims of prosecutorial misconduct.[2] We address each argument in turn.

### A. Motion to Suppress

Common argues that the district court should have suppressed his alleged confession because the officers did not provide *Miranda* warnings. In reviewing the denial of a motion to suppress, we review factual findings for clear error, with special deference to the district court's credibility determinations. *United States v. Jones*, 614 F.3d 423, 427 (7th Cir. 2010). We will not disturb the district court's credibility determinations unless they are "completely without foundation." *United States v. Huebner*, 356 F.3d 807, 812 (7th Cir. 2004) (citation and internal quotation marks omitted).

The district court found the officers' testimony that they *Mirandized* Common to be credible. Common argues that Hanrahan's testimony that he witnessed Murphy *Mirandize* Common should have been discredited because Hanrahan

---

[2] Common also challenges the enhancement of his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). He argues that his prior convictions should have been charged in the indictment and proven to the jury beyond a reasonable doubt. However, Common concedes his argument is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998), which held that prior convictions are sentencing factors that may be determined by a judge and need not be alleged in the indictment or proven to a jury. Since *Almendarez-Torres* is still good law, we affirm the district court's imposition of this sentencing enhancement.

did not record this in the police reports. Common also points out that Hanrahan's reports did not state that he heard Common confess. Rather, the reports state that Common confessed to Murphy.

However, Common has not shown that the district court clearly erred in finding that the officers were credible. The district court acknowledged Common's argument but was not convinced. The court noted that police reports are often not as detailed as they could be. Additionally, the court was convinced by Hanrahan's explanation for why he wrote that Common confessed to Murphy, even though Hanrahan was also present for the confession. Hanrahan explained that he wrote the reports this way "because Officer Murphy was the one talking to [Common] and the one asking the questions." The district court's findings are not "completely without foundation," thus we will not second guess its credibility determination. *See Huebner*, 356 F.3d at 812.

The district court also based its denial of the motion to suppress on its finding that Common was not credible when he claimed he was not *Mirandized*. The court considered Common's credibility generally, as reflected by his other statements at the hearing[3] and his criminal history. The court also noted that Common's story lacked corroboration, as Common did not call any witnesses at the suppression hearing. On appeal, Common argues that since his witnesses corroborated

---

[3] Specifically, the court discussed Common's statement that he did not recognize the officers as policemen until they handcuffed him, which the court did not find believable. The court acknowledged that this statement was not material to the *Miranda* issue but found that it reflected on Common's general credibility. This was not clear error.

his story at trial, the district court should have granted his motion to reconsider his motion to suppress.

We disagree. When denying Common's motion to reconsider the motion to suppress, the court acknowledged that Common's story had been corroborated at trial and still found his testimony incredible. Further, as noted above, Common chose not to present his witnesses at the suppression hearing, where they could have been cross-examined more broadly in the absence of a jury. It is not our role to rescue Common from the consequences of his strategic choice. *See United States v. Addison*, 803 F.3d 916, 920 (7th Cir. 2015). In sum, we affirm the district court's denial of Common's motion to suppress.

## B. Testimony of the Fingerprint Technician

Common argues that the district court erred in admitting the testimony of Savage, the government's fingerprint technician. We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Jackson*, 787 F.3d 1153, 1156 (7th Cir. 2015). "[W]e will defer to the district court unless no reasonable person could adopt its view." *United States v. Schmitt*, 770 F.3d 524, 532 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1537 (2015).

Common challenges the portion of Savage's testimony in which he stated that it was "extremely uncommon" to recover fingerprints from firearms and that he had only recovered fingerprints from 30 out of 800 firearms. In Common's view, this statistical evidence should have been barred because it is irrelevant. Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Common argues that the sole fact of consequence

is whether he possessed a gun on June 24, 2011 and that statistical evidence of this kind has no bearing on this fact.

We disagree. The statistical evidence about how often fingerprints are recovered is relevant because it helps the jury decide how much weight to give the fact that no prints were found. In other words, the statistical evidence helps explain the absence of prints. The lack of prints does not necessarily mean that Common never touched the gun or that somebody wiped the prints off the gun. The absence could simply be due to the fact that fingerprints are difficult to recover from firearms. The district court provided a useful analogy: If Savage had testified that fingerprints are found ninety-eight percent of the time, then this would be relevant. If fingerprints were found on most firearms, the fact that fingerprints were not found on this gun would carry more weight.

Further, the district court correctly pointed out that there is a common misconception about the prevalence of fingerprint evidence. Savage's testimony was relevant to helping jurors overcome this misconception.

Common argues that *United States v. Paladino*, in which we noted that similar statistical evidence was "obscure," supports his argument that this evidence is irrelevant. 401 F.3d 471, 478 (7th Cir. 2005). However, this case is more similar to *United States v. Glover*, in which we acknowledged that the dicta in *Paladino* could be read to suggest that this type of statistical evidence could have limited probative value, but still

affirmed the district court's admission of the statistical evidence.[4] 479 F.3d 511, 518 (7th Cir. 2007). We explained that in *Glover*, the testimony helped rebut the defendant's argument that the lack of fingerprints indicated innocence, stating:

> [The statistical evidence] assisted the jury in understanding that … certain objects are not particularly conducive to finding prints. [The defendant] did not have an opportunity to wipe his prints from the gun, nor was there evidence that he wore gloves. Without [the fingerprint technician's] testimony, the jury may not have understood how [the defendant] could have possessed the weapon without leaving prints.

*Id.* As in *Glover*, the jury may not have understood how Common could have possessed the gun without leaving prints.

Common attempts to distinguish *Glover* by arguing that unlike the defendant in *Glover*, Common did not seek to use evidence of the lack of prints to prove innocence. But his defense rested on his allegations of police misconduct. While he

---

[4] In *Paladino*, the district court judge had an exchange with the government's fingerprint expert that emphasized that it is uncommon to find fingerprints. 401 F.3d at 477–78. We explained that the central issue was whether the trial judge improperly signaled to the jury that he thought the defendant was guilty. *Id.* at 478. Thus, our discussion of the relevance of the statistical evidence is dicta. Further, *Paladino* is distinguishable. In that case, it was irrelevant whether the defendant touched the gun car because he admitted to driving the car with the gun in it and was thus in possession of the gun. *Id.* Therefore, the statistical evidence was irrelevant. In contrast, Common did not admit to being in possession of the gun and rather accused the police of planting it on him. Thus, it is relevant that no prints were found on the gun, and the statistical evidence explained how much weight to give the absence of prints.

did not explicitly argue that the lack of fingerprints indicated that the officers planted the gun on him, this argument was implied in his theory of the case. Therefore, the statistical evidence was relevant because it allowed the government to rebut this position.

Finally, Common argues that even if Savage's testimony was relevant, it was unfairly prejudicial and should have been excluded under Federal Rule of Evidence 403. Common asserts that the testimony was confusing because Savage did not discuss the circumstances in the other cases in which he did not recover prints from the guns. We disagree. The circumstances of the other cases were not necessary for the jury to understand Savage's point that fingerprints are rarely recovered from guns. We conclude that the district court did not abuse its discretion in admitting Savage's testimony.

### C. Motion for a New Trial

Next, Common argues that prosecutorial misconduct during closing arguments violated his Fifth Amendment right to due process and a fair trial. Common did not object to the government's closing arguments at trial, so we review for plain error. *See United States v. Bowman*, 353 F.3d 546, 550 (7th Cir. 2003). Common must establish "not only that the remarks denied him a fair trial, but also that the outcome of the proceedings would have been different absent the remarks." *Id.* (citation and internal quotation marks omitted).

To evaluate a claim of prosecutorial misconduct, we first determine whether the remarks by the prosecutor were improper when viewed in isolation. *United States v. Alexander*, 741 F.3d 866, 869 (7th Cir. 2014). If the remarks were improper, we then evaluate them "in the context of the entire record"

and determine whether the defendant was deprived of a fair trial. *United States v. Sandoval*, 347 F.3d 627, 631 (7th Cir. 2003). "[I]mproper comments during closing arguments rarely rise to the level of reversible error … ." *United States v. Amerson*, 185 F.3d 676, 685 (7th Cir. 1999) (citation and internal quotation marks omitted).

### 1. *Distorting the Burden of Proof*

Common argues that the government distorted the burden of proof in closing arguments. A prosecutor's statements that "in effect distort the burden of proof by suggesting incorrectly what the jury must find in order to reach a certain verdict" can warrant reversal. *United States v. Vargas*, 583 F.2d 380, 386 (7th Cir. 1978).

Common analogizes his case to *Vargas*, in which the government said: "[I]f you find the defendant not guilty, I want you to write on there that all of those [government agents] lied." *Id.* at 387. The other alternative, the prosecutor argued, was a verdict of guilty. *Id.* We held that the prosecutor's statement was improper because it distorted the burden of proof. *Id.* In order to acquit the defendant, the jurors did not have to believe that the government agents were lying. *Id.* Instead, the jurors could have decided—without adopting one side's version of the story in its entirety—there was insufficient evidence to convict beyond a reasonable doubt. *Id.*

Common also analogizes his case to *United States v. Cornett*, in which we held that it was error—albeit harmless error—for the prosecutor to argue that to acquit the defendant, the jurors had to conclude that the police lied. 232 F.3d 570, 574 (7th Cir. 2000). The prosecutor in *Cornett* argued: "[I]f you are going to find [the defendant] not guilty … you are going

to *have to* find that [the officers] lied to you…. *It's really that black and white.*" *Id.* at 573 (emphasis added). We held that this remark "misstated the burden of proof because the jury could have believed that the witnesses told the truth and yet still found that the government had failed to prove … guilt beyond a reasonable doubt." *Id.* at 574.

Common argues that, as in *Vargas* and *Cornett*, the prosecutor improperly misstated the burden of proof by saying:

> If you believe that [the officers] framed an innocent man that they did not know … vote not guilty…. [I]f [Common's argument] overcomes the government's evidence and proves that these officers who testified are liars, please acquit the defendant…. [T]o discount those officers' testimony, you must find them to be corrupt, reckless, and stupid…. How can you determine who lied? … You can absolutely reach a verdict, and the Judge is going to instruct you on how to get there. There are two tests that you can walk through and determine … who lied to you.

The government's comments in this case can be distinguished from those in *Vargas* and *Cornett*. The prosecutors in *Vargas* and *Cornett* presented the jury with an improper mandate by stating that to find the defendant not guilty, the jury had to believe that all of the government witnesses *must* have lied. In other words, the government presented a biconditional statement: You can acquit the defendant *if and only if* you find that the government is lying. This misstates the burden of proof because the jury could acquit if it believed the government

witnesses but concluded that the government did not prove guilt beyond a reasonable doubt.

In contrast, the prosecutor in this case did not state that the *only* way to find Common not guilty was to find that the officers lied. Rather, the government presented a conditional statement: *If* the jury believed the officers were lying and framed Common, then the jury should acquit. This did not preclude the jury from acquitting Common for another reason, such as the government not meeting its burden of proof. Thus, the statements were not improper. *See United States v. Marshall*, 75 F.3d 1097, 1107–08 (7th Cir. 1996) (holding that it was not improper for the prosecutor to comment that jury should acquit if it disbelieved FBI agent because the prosecutor did not state that disbelieving FBI agent was the only way to acquit); *United States v. Hernandez*, 865 F.2d 925, 930 (7th Cir. 1989) ("The prosecutor correctly posited that if the jury disbelieved the government's witnesses, they should acquit the defendant. No error exists in this statement.")

Even assuming, arguendo, that the government's statements were improper, any error was harmless. To evaluate whether these statements deprived Common of a fair trial, we evaluate them in the context of the entire record, considering five factors:

> 1) the nature and seriousness of the misconduct; 2) the extent to which the comments were invited by the defense; 3) the extent to which the prejudice was ameliorated by the court's instruction to the jury; 4) the defense's opportunity to counter any prejudice; and 5) the weight of the evidence supporting the conviction.

*Sandoval*, 347 F.3d at 631 (citation and internal quotation marks omitted).

In *Cornett*, we found that the government's improper statements constituted harmless error because there was no indication that the jury would have returned a different verdict absent the statements. 232 F.3d at 575. We noted that in evaluating the five factors and assessing the prejudicial effect of a prosecutor's misstatement, we place considerable emphasis on the curative effect of jury instructions and the weight of the evidence. *Id.* at 574.

Here, the district court gave proper instructions on the burden of proof. "Absent evidence to the contrary, we presume that the jury understood and followed the district court's instructions." *Id.* Regarding the weight of the evidence, this was a case based primarily on competing credibility determinations. Turning to the remaining factors, while Common did not invite the prosecutor's statements, the seriousness of the alleged misconduct was not significant, as the statements were not clearly out of bounds.

Finally, the statements were made in rebuttal, so Common did not have a chance to respond. However, Common never objected to the statements at trial, so the district court was not presented with the opportunity to give curative instructions, nor did the prosecutor have the opportunity to clarify or amend the statements. *See id.* at 575 (noting that improper comments were made during rebuttal but that defendant did not object and finding harmless error). We conclude, based on this analysis, that Common has not shown that the jury would have returned a different verdict absent the government's statements, so the statements were at most harmless error.

### 2. *Misstating the Evidence*

Next, Common contends that the government made three factual misstatements during closing arguments. Misstating the evidence is a form of prosecutorial misconduct that can deprive a defendant of a fair trial. *See Darden v. Wainwright*, 477 U.S. 168, 180–82 (1986). Common did not make this objection at trial, so we review for plain error. *Bowman*, 353 F.3d at 550.

First, Common argues that the government misstated the evidence by saying: "Did Adolph Common have these drugs or not, because all six defense witnesses said he didn't?" Common contends that this was incorrect because only three witnesses were asked whether Common had drugs, and only one of these three witnesses (his brother) stated directly that Common did not have drugs on him. The other two witnesses (Common's mother and stepfather) stated that *to their knowledge*, Common did not have drugs on him.

However, the other three defense witnesses testified that Common was doing nothing wrong and described the items the officers took from Common during the search without mentioning drugs. Since these witnesses gave detailed accounts of the search but did not reference drugs, it was not improper for the government to argue that all six defense witnesses said Common did not have drugs on him.

Second, Common objects to the government saying: "How many cell phone videos or photos were taken during the approximately 10-15 minute frame job? … Zero." Common correctly points out that the non-existence of cell phone videos or photos was not in evidence. We are not fully convinced that

this comment misstated the evidence because it could be interpreted as "there is zero evidence of cell phone videos or photos." Without deciding this issue, we conclude that this was at most harmless error, as explained below.

Third, Common takes issue with the statement: "How many defense witnesses who watched the arrest asked the officers about what they were doing to the defendant? Zero." Common correctly points out that at trial both his girlfriend and his mother testified about asking the officers what they were doing. The government concedes to having made a mistake about the girlfriend's testimony.[5]

However, the second and third remarks were harmless error when considered in the context of the entire record. Turning to the first of the five factors used to determine whether the defendant was denied a fair trial, the district court instructed the jury that "[t]he evidence includes only what the witnesses said …. The lawyers' statements and arguments are not evidence. If what a lawyer said is different from the evidence as you remember it, the evidence is what counts." This jury instruction had a curative effect. *See Cornett*, 232 F.3d at 573–74.

Regarding the weight of the evidence, this was a case based on opposing credibility determinations. The alleged misconduct was not serious, as these were minor misrepresentations of peripheral facts. Recognizing that Common did not invite the statements made in rebuttal, we note that this must be balanced against his failure to object at trial, which

---

[5] The government did not misstate the evidence with regard to the testimony of Common's mother. Rather, the government acknowledged her testimony and argued that she was not believable.

means that Common must show now that the jury would have returned a different verdict absent the government's statements.

Common has given us no reason to conclude that the government's statements affected the outcome. Based on our review of the government's statements in the context of the parties' closing arguments, we conclude that the government's statements were at most harmless error. Thus, the district court did not plainly err in denying Common's motion for a new trial.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.