In the

# United States Court of Appeals
### For the Seventh Circuit

No. 15-2347

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN BRISENO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 11 CR 00077 — **Philip P. Simon**, *Chief Judge.*

ARGUED SEPTEMBER 9, 2016 — DECIDED DECEMBER 2, 2016

Before POSNER, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Juan Briseno was convicted of
multiple racketeering crimes relating to his participation in a
street gang. On appeal he seeks a new trial, arguing that dur-
ing closing arguments, the government improperly refer-
enced evidence pertaining to a prior acquittal, impermissibly
shifted the burden of proof to him, and vouched for gov-
ernment witnesses in an inappropriate fashion.

But Briseno failed to object at trial to any of these statements, and none was so egregious that the trial judge should have intervened. Although earlier in the trial the government highlighted evidence relating to an attempted murder for which Briseno had been acquitted, that evidence was also relevant to several other distinct charges that were submitted to the jury. And while the government did erroneously shift the burden of proof by suggesting that Briseno could be acquitted only if the jury concluded that the government's witnesses had testified falsely, that error was made harmless by multiple curative instructions from the judge and by the significant evidence weighing in the government's favor. Finally, the statements that Briseno argues constitute improper vouching are better viewed as permissible appeals to the jurors' common sense.

In addition, Briseno complains that the jury instruction on the RICO conspiracy charge was internally inconsistent and confusing, since it required the government to prove an agreement as to the commission of "at least two acts of racketeering" but not "two or more specific acts." We find no error in this instruction, as it mirrors our pattern jury instruction on the topic and comports with our case law. So we affirm Briseno's conviction.

## I.  BACKGROUND

Defendant Juan Briseno was indicted and tried for murder, attempted murder, and a number of other RICO-related crimes relating to his two-year association with the East Chicago, Indiana Chapter of the Imperial Gangsters Street Gang (IGs). At the end of the government's case-in-chief, Briseno moved for judgment of acquittal on all counts. The district judge granted Briseno's motion only as to the counts relating

to the attempted murder of Andreas Arenivas, who apparently became a target of the IGs after testifying against one of their members in an earlier criminal trial.

The trial against Briseno continued, and during closing arguments the government made a number of statements that concern the heart of Briseno's appeal. First, the government referenced various alleged facts connecting Briseno to the attempted murder of Arenivas. Second, the government contended that in order for Briseno to be not guilty, the government's witnesses must have conspired to frame him and supply false testimony at trial. Third, the government emphasized that eight of its witnesses deserved to be believed.

After deliberating for two days, the jury convicted Briseno on nine of the twelve remaining counts: conspiracy to participate in racketeering, conspiracy to possess with intent to distribute at least five kilograms of cocaine and 100 kilograms of marijuana, five separate murders in aid of racketeering, attempted murder in aid of racketeering, and use of a firearm during a crime of violence. 18 U.S.C. §§ 846, 924(c), 1959(a)(1) & (5), 1962(d). The district judge sentenced Briseno to five consecutive terms of life imprisonment for the murders, two consecutive life terms for the conspiracies, a 120-month concurrent sentence for the attempted murder, and a 120-month consecutive sentence for the firearm count. This appeal followed.

## II. ANALYSIS

Because Briseno failed to object to any of the government's statements at trial that he challenges now, we review the statements for plain error. *United States v. Sandoval-Gomez*, 295 F.3d 757, 762 (7th Cir. 2002). We begin by exam-

ining whether the statements were improper when viewed
in isolation; and if the answer is yes, we will review the
statements alongside the entire record and ask whether the
statements deprived Briseno of a fair trial. *United States v.
Common*, 818 F.3d 323, 331 (7th Cir. 2016). Briseno must also
show that the outcome of the proceedings would have been
different had the statements not been made. *Sandoval-Gomez*,
295 F.3d at 762. A statement, while improper, can neverthe-
less be harmless when considering:

> 1) the nature and seriousness of the miscon-
> duct; 2) the extent to which the comments were
> invited by the defense; 3) the extent to which
> the prejudice was ameliorated by the court's
> instruction to the jury; 4) the defense's oppor-
> tunity to counter any prejudice; and 5) the
> weight of the evidence supporting the convic-
> tion.

*Common*, 818 F.3d at 333. In short, we will not grant Briseno
a new trial "unless there was an error so egregious that the
district judge should have stepped in even though no objec-
tion was made." *United States v. Alexander*, 741 F.3d 866, 870
(7th Cir. 2014). "Improper comments during closing argu-
ments rarely rise to the level of reversible error." *Common*,
818 F.3d at 331 (citation and internal quotation marks omit-
ted).

## A. Statements Relating to Acquitted Counts Not Erro-neous

Briseno claims that the government improperly argued
that he was guilty of attempting to murder Arenivas and of
using a firearm in that attempt, since the district judge had

previously acquitted him on both counts. This presumes, of course, that the evidence of Briseno's alleged involvement with Arenivas's attempted murder had no bearing on the counts that remained following the judgment of acquittal. *Cf. United States v. Bailin*, 977 F.2d 270, 276 (7th Cir. 1992) (holding that the government was barred from "relitigating issues that were necessarily and finally decided in the defendant's favor by reason of the jury's partial acquittal on other counts" from a previous trial). But that is not the case here.

Although not expressly articulated, we understand Briseno to be invoking the law of the case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citation and internal quotation marks omitted). Although the law of the case doctrine is distinct from issue preclusion, insofar as the latter applies to rulings in different *proceedings*, and not simply different *stages* within the same proceeding, *see generally Lorea v. United States*, 714 F.3d 1025, 1028 (7th Cir. 2013), we view the following issue-preclusion considerations as instructive—and have modified them to comport with the law of the case doctrine:

> (1) the court cannot engage in hyper-technicality, but rather must examine the pleadings, evidence, charge, and other relevant material to determine whether a rational jury could have based its verdict on a different issue; (2) [the law of the case doctrine] only applies when a relevant issue [from the court's earlier decision] is an "ultimate issue," i.e., an

issue that must be proven beyond a reasonable
doubt; [and] (3) the defendant bears the bur-
den of proof in proving that the ultimate issue
was necessarily determined by [the court in its
earlier decision].

*United States v. Evans*, 486 F.3d 315, 322–23 (7th Cir. 2007)
(quoting *United States v. Salerno*, 108 F.3d 730, 741 (7th Cir.
1997)) (internal quotation marks omitted).

Briseno claims that the following five pieces of evidence
should not have been referenced during closing arguments:
(i) Briseno's alleged statement of intent to kill Arenivas
should their paths cross; (ii) Briseno's alleged displeasure
with a fellow IG for not pointing out Arenivas when they
were all present at a party together; (iii) Briseno's alleged
presence at the scene of Arenivas's shooting; (iv) Briseno's
alleged remark that he caught Arenivas "slipping" and "lit
him up"; and (v) the use of the same gun in the murder of
Harris Brown (for which Briseno was charged). But Briseno
has not satisfied his burden of establishing that these facts
exclusively concern Arenivas's attempted murder.

As the government correctly notes, much of the evidence
relates to the IGs' policy of attacking individuals who posed
a threat to the gang's drug-trafficking enterprise—including
individuals who supplied unfavorable information to inves-
tigators and prosecutors—which in turn directly relates to
the RICO conspiracy charge. Moreover, the evidence con-
cerning the gun was relevant to Brown's murder, a charge
that was ultimately submitted to the jury. In short, the Are-
nivas attempted-murder charges were not re-litigated in vio-
lation of the law of the case doctrine. So the government did

not act improperly by referencing the Arenivas-related evidence in its closing statements.

Even if the government's statements were somehow improper, any error was harmless. As Briseno concedes, during closing arguments the defense informed the jury that it no longer needed to consider the attempted murder of Arenivas, and the verdict forms the jury was given did not include the two counts for which Briseno had been acquitted. In addition, the jury was specifically instructed to consider each charge separately, and there was ample evidence in the record connecting Briseno to the conspiracy and the murders for which he was convicted—in particular, eyewitness testimony from multiple individuals (some of whom were not IGs) and videotape from several of the crime scenes.

### B. Harmless Error in Statements Involving Burden of Proof

During its rebuttal portion of closing arguments, the government stated:

> So just to be clear, for defendant to be not guilty of this one, what would have to happen? What exactly—how would this play out so that the defendant is not guilty, that this is just a big conspiracy to frame him? Well, what it would have to be, that Garza, Joseph Torres and Andres Lara all conspired or framed the defendant. They all get their stories together to frame the defendant. They then get Brandon Weaver, who's not an Imperial Gangster, in on their conspiracy or Brandon Weaver just randomly picks up the wrong guy and it's just the de-

> fendant's bad luck and then somehow they get
> the stranger Joseph Haryasz in on the conspir-
> acy to frame the defendant…. And then, just
> out of bad luck, the defendant's caught with a
> 30-round magazine, and out of bad luck, Jacob
> Davidovich happens to remember selling him
> the exact same type of gun as is the murder
> weapon. Ladies and gentlemen, that's just too
> much of a conspiracy, and that's too much bad
> luck for anyone to have.

According to Briseno, these statements improperly suggest-
ed that the jury would need to choose between two "stark,
bright-line and absolute alternatives that might serve to dis-
tort the [government's] burden of proof." *United States v.
Marshall*, 75 F.3d 1097, 1108 (7th Cir. 1996).

We agree that under our case law the government
crossed the line by implying that the jury could not acquit
Briseno while at the same time accepting as truthful the tes-
timony of the government's witnesses. The government con-
cedes that it "imperfectly expressed" a bright-line argument,
but believes that the argument simply concerned "what it
would take to believe defense's theory of the case." A plain
reading of the government's statement does not support that
interpretation.

After posing the question "So just to be clear, for defend-
ant to be not guilty of this one, what would have to hap-
pen?," the government did not present competing options
and highlight the one that best suited its case. *See United
States v. Sandoval*, 347 F.3d 627, 632 (7th Cir. 2003) (not im-
proper to "suggest[] to the jury that it cannot believe the tes-
timony of the officers and that of the defendant at the same

time"). Nor did the government begin with the proposition that its witnesses had lied and ask what the more appropriate verdict would be, which would not have "preclude[d] the jury from acquitting [Briseno] for another reason, such as the government not meeting its burden of proof." *United States v. Common*, 818 F.3d 323, 332 (7th Cir. 2016) (not improper to suggest that "[*i*]*f* the jury believed the officers were lying and framed Common, then the jury should acquit").

Instead, the government began with the proposition that Briseno was not guilty, and indicated that such a finding could be reached *only if* the jury concluded that the government's witnesses conspired to give false testimony. That was improper. *Compare United States v. Cornett*, 232 F.3d 570, 574 (7th Cir. 2000) (statement that the jury would have to find that the government's witnesses lied in order to acquit misstated the burden of proof because the jury could have believed the witnesses but still concluded that the government failed to prove guilt beyond a reasonable doubt), *and United States v. Vargas*, 583 F.2d 380, 386 (7th Cir. 1978) (improper to state, "if you find the defendant not guilty, I want you to write on there that all of those people lied"), *with Marshall*, 75 F.3d at 1107–08 (not improper to state that the jury should acquit if it believed that the witness lied because the government did not argue that disbelieving its witness was the only way to acquit).

This error alone, however, is not fatal for the government, since Briseno must also show that these statements deprived him of a fair trial in order to prevail. As the government notes, the jury was repeatedly instructed before and after the presentation of evidence that the government bore the burden of proving Briseno's guilt. And there was more

than sufficient evidence of Briseno's guilt, much of which involved credibility determinations as to the government's witnesses. So the government's improper statement was harmless error. *See, e.g.*, *Common*, 818 F.3d at 333 (When "assessing the prejudicial effect of a prosecutor's misstatement, we place considerable emphasis on the curative effect of jury instructions and the weight of the evidence.").

### C.  Statements Involving Witness Credibility Not Erroneous

Briseno also assails the government for improperly vouching for several government witnesses during closing arguments. A prosecutor may not vouch for a witness by personally endorsing that witness's truthfulness, or by implying that facts not in evidence support the witness's credibility. *United States v. Wolfe*, 701 F.3d 1206, 1212 (7th Cir. 2012). Such vouching does not, however, include "a prosecutor's reminder to the jury of evidence presented at the trial that tends to show that a witness was telling the truth." *United States v. Alexander*, 741 F.3d 866, 869–70 (7th Cir. 2014) (citation and internal quotation marks omitted).

Briseno contends that several separate groups of statements constitute impermissible vouching. First, he points to statements concerning four witnesses (David Almarez, Andres Lara, Anthony Baldazo, and Galo Feliciano) in which the government asserted that, had the witnesses intended to lie, they would have made themselves more valuable by claiming to have witnessed first-hand certain of Briseno's crimes. These statements simply appeal to the jurors' common sense and are not problematic. *See Alexander*, 741 F.3d at 871 (finding no issue with the statement that "if [the witness] were going to lie, he would have done so on a larger, more

persuasive scale"). So, too, with regard to the government's assertion that if Vincent Garza had planned to lie about two murders and one attempted murder that occurred in rapid succession, he would have minimized his involvement or even pinned the murders entirely on Briseno.

Second, Briseno criticizes the following statement regarding Feliciano's plea agreement:

> Feliciano pled guilty to murder for being the driver. His plea deal is out the window if he lies. And if the judge catches him in a lie, he's done and he's doing life. Why would he protect those guys? Those guys weren't in the car. Those guys had nothing to do with it.

It is well established that the government can "point out that its witnesses, under their plea agreements, are required to testify truthfully." *United States v. Clarke*, 227 F.3d 874, 885 (7th Cir. 2000); *see also, e.g.*, *United States v. Spivey*, 859 F.2d 461, 466 (7th Cir. 1988) (permissible for government to state that cooperation clauses in witnesses' plea agreements "provided them with a motive to tell the truth"). Briseno contends in conclusory fashion that the government's statement somehow implied that facts not before the jury lent credibility to Feliciano. Perhaps he is suggesting that Feliciano had an incentive for testifying truthfully that was not disclosed to the jury. In *United States v. Edwards*, for example, we found that the government had improperly vouched for a police officer by asking why the officer would risk his career by lying about seeing the defendant with drugs. We found that this rhetorical question invited the jury to speculate that "the government fires officers who lie under oath … or prosecutes them … and no evidence to that effect was present-

ed." 581 F.3d 604, 610–11 (7th Cir. 2009). But the discussion of the plea agreement plainly demonstrates that there was no comparable failure to disclose here.

Third, Briseno contends that the government erred in stating that Brandon Weaver "was not charged with anything. He's not an Imperial Gangster. He has no problem with the defendant. He has no motive. He has no bias." We see no problem with this statement, as it cites evidence—the absence of charges or IG affiliation and Weaver's relationship with Briseno—from which truthfulness can be inferred. *See Alexander*, 741 F.3d at 870 ("[T]he prosecutor may point out the absence of specific evidence of a motive for the [witness] to lie ….").

Fourth, Briseno faults the government for stating that Joseph Haryasz acted like "a real good, honest citizen" when he called 911 after hearing gunshots, and that Haryasz was "just John Q. Citizen. I don't know how old he was, 50s. Has a legitimate job at the Times. I doubt he even knows any gangbangers." The government's commentary on Haryasz's purported civic virtues, when read in context, are not actionable, as they simply highlight the facts concerning Haryasz that the government believes exemplify his trustworthiness.

More concerning, however, is the government's use of the first-person "I" in speculating about Haryasz's association with "gangbangers." The government made a similar statement regarding Marissa Harper's testimony about being shot:

> Do you think [Harper] was lying about the bullet through the car seat? I don't know, you saw her arm with the through and through wound

> where she's hit on one side and it comes out
> the other side of her arm. Obviously she wasn't
> lying about that. *I don't know why she would lie
> about the car seat.*

(emphasis added). In general, an attorney's use of the first-person "I" is improper when paired with personal comments or an implication that the attorney possesses knowledge foreign to the jury, but is tolerable when paired with comments on reasonable inferences drawn from evidence. *See United States v. Anderson*, 303 F.3d 847, 856 (7th Cir. 2002).

Here, the government's use of "I" regarding Harper and the car seat could be viewed as proper, to the extent the government was asking the jury to apply common sense to a theory (Harper having lied) that the evidence did not support. *See id.* (concluding that the statement "Well, maybe it doesn't make sense to many people, but I am here to tell you it happens" is a "generic statement which would be understood as asking the jury to apply common sense and to consider a competing inference, both of which are proper argument"). However, we struggle to find a permissible interpretation of the statement, "I doubt he even knows any gangbangers," which smacks of personal commentary, if not outright endorsement.

But we need not resolve this issue; even if one or both of the statements were improper, they did not deny Briseno a fair trial. The statements were solitary and brief in nature, the district judge instructed the jurors both before and after closing arguments that attorney statements were not evidence, and as noted above the vast weight of the evidence was against Briseno. So Briseno is not entitled to a new trial

based on the government's statements during closing arguments.

Before turning to Briseno's complaint about jury instructions, we pause to commend the U.S. Attorney's Office in the Northern District of Indiana for reviewing this case closely and for unilaterally committing to undertake additional closing-arguments training for its attorneys.

### D. RICO Conspiracy Jury Instruction Not Erroneous

During the trial, the jury received the following instruction as to the RICO conspiracy count:

> In order to find a "pattern of racketeering activity" for purposes of Count One, you must find beyond a reasonable doubt that the defendant agreed that some member or members of the conspiracy would commit *at least two acts of racketeering* ….
>
> *[T]he government does not have to prove* that any racketeering acts were actually committed at all, or that the defendant agreed to personally commit any such acts, or that the defendant agreed that *two or more specific acts* would be committed.

(emphasis added). Briseno views the instruction as internally inconsistent, insofar as it states that the government must prove an agreement as to the commission of "at least two acts of racketeering," but not "two or more *specific* acts." According to Briseno, this purported inconsistency misled the jury.

Before we reach the merits of Briseno's argument, we must determine the standard of review. Briseno concedes that he failed to object at trial, but claims this amounted to forfeiture, which we review for plain error. *United States v. Seals*, 813 F.3d 1038, 1045 (7th Cir. 2016). The government, in contrast, argues that Briseno's failure to object constitutes waiver, which precludes review except in very limited circumstances that have not arisen here. *See United States v. Natale*, 719 F.3d 719, 731 (7th Cir. 2013); *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005). Although we have not always used the terms waiver and forfeiture consistently, we have generally found forfeiture when a party negligently or accidentally fails to raise an argument, whereas waiver occurs when a party "intentionally relinquishes or abandons a known right." *Seals*, 813 F.3d at 1045.

When jury instructions are involved, we have typically viewed an affirmative acceptance as a waiver. *See, e.g., United States v. Smith*, 818 F.3d 299, 302 (7th Cir. 2016); *United States v. Ajayi*, 808 F.3d 1113, 1121 (7th Cir. 2015). But we have also recognized that treating an acceptance of jury instructions as waiver can produce harsh results in cases where the defendant may have negligently failed to object. *Ajayi*, 808 F.3d at 1121 (discussing *Natale*, 808 F.3d at 729–30). So when defense counsel utters "nothing more than a simple 'no objection' during a rote call-and-response colloquy with the district judge," forfeiture may be the more appropriate classification. *Natale*, 719 F.3d at 730–31.

Here, when asked if he had any objections to any of the jury instructions, defense counsel replied, "None at all, Your Honor." And when asked if he was "in agreement with instructions 1 through 62," counsel responded, "Yes, your

Honor." These answers do not strike us as "a calculated choice to stay silent," *United States v. Anderson*, 604 F.3d 887, 1001 (7th Cir. 2010), and we see nothing in the record that hints at a motivation for forgoing the opportunity to object. But we need not decide the issue; even if forfeiture occurred, the RICO conspiracy instruction was not plainly erroneous.

For one, there was no "clear or obvious" error. The instruction mirrors our own pattern criminal jury instruction for racketeering conspiracy and is consistent with our case law on the subject. *See United States v. Tello*, 687 F.3d 785, 792–93 (7th Cir. 2012) (rejecting the premise that specific predicate acts of racketeering are required for a racketeering conspiracy conviction); *accord United States v. Benabe*, 654 F.3d 753, 777 (7th Cir. 2011); *United States v. Glecier*, 923 F.2d 496, 500 (7th Cir. 1991). Although the difference between "at least two acts" and "two or more specific acts" may be a fine one, it does exist. For example, agreeing that members of a gang will engage in extortion in a certain general area, during a certain time frame, and of a certain scope constitutes a general agreement to act, despite a lack of knowledge or agreement as to the precise dates, locations, and individuals that the extortion will involve. *See Tello*, 687 F.3d at 796.

### E.  No Cumulative Error

In addition, Briseno has failed to demonstrate cumulative error, since he has failed to identify any error that individually or in combination with others deprived him of a fair trial. *See United States v. Powell*, 652 F.3d 702, 706 (7th Cir. 2011) (Cumulative error requires proof "(1) that multiple errors occurred at trial; and (2) those errors, in the context of the entire trial, were so severe as to have rendered his trial fundamentally unfair."); *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th

Cir. 2000) ("[C]ourts must be careful not to magnify the significance of errors which had little importance in the trial setting."). So Briseno has failed to show that he is entitled to a new trial.

### III.  CONCLUSION

We AFFIRM the district court's judgment.