┌─────────────────────────────────────────────┐
│ **NONPRECEDENTIAL DISPOSITION** │
│ To be cited only in accordance with Fed. R. App. P. 32.1 │
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 17, 2019[*]
Decided September 19, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

Nos. 18-3017 & 18-3225

| | |
|---|---|
| HYE-YOUNG PARK, | Appeals from the United States District |
| *Plaintiff-Appellee/Cross-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 15-2136 |
| | |
| CHARLES SECOLSKY, | Colin S. Bruce, |
| *Defendant-Appellant/Cross-Appellee*, | *Judge.* |
| | |
| *and* | |
| | |
| MICHAL T. HUDSON, *et al.*, | |
| *Defendants-Appellees*. | |

**O R D E R**

Hye-Young Park, a former graduate student at the University of Illinois, filed a wide-ranging federal lawsuit after she was sexually harassed by a professor and a

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

visiting researcher. Some of her claims were dismissed on the defendants' motion, and others were adjudged in favor of both her and the defendants at summary judgment. She proceeded to trial on her remaining claims and was awarded $500,000 in damages for her claims against the visiting researcher, Charles Secolsky. She received no money damages, however, for a battery claim decided in her favor against the professor, Dr. Robert Stake. Secolsky appealed from the judgment, and Park cross-appealed. For the reasons stated below, we affirm the district court's judgment.

Park, originally from South Korea, transferred to the University of Illinois in 2003 to continue her doctoral studies. There, she enrolled in a course taught by Dr. Robert Stake, a Professor Emeritus. Later, between 2005 and 2012, Stake assisted and advised Park in her efforts to obtain her doctorate. After graduating in 2013, Park stayed at the university and worked without compensation for two professors through the Optional Practical Training program (a form of temporary employment that allows eligible students with F-1 visas to remain legally in the country for another year to gain work experience in their field of study). At times, Park also sat in on a class taught by Stake.

In October 2013 Park went to lunch with Stake to ask for help with job applications. At lunch, Park asserts, Stake kissed her on the lips; Stake contends that the kiss was on her forehead. Either way, the kiss was unwanted, and it was the first incident of sexual harassment that led to this lawsuit.

That fall Park met Charles Secolsky, a visiting researcher at the university's Center for Instructional Research and Curriculum Evaluation. Secolsky wrote grant proposals, taught case-study methods, and lectured on research methodology. He also served as an instructor for one of Stake's classes that Park was attending. Park developed an academic relationship with Secolsky. At the time, she was writing a book, and Secolsky reviewed portions of it for her. They also collaborated on other academic matters, such as writing grant proposals and a conference paper.

In January 2014 Park was at Secolsky's residence—where she sometimes went to work—and was startled when he asked her to watch a pornography video. (Secolsky stated later that he was experiencing a manic, bipolar episode and was "really extremely angry at her.") According to Park, Secolsky told her that the video would teach her about "American culture." She told Secolsky that she did not want to see the video and tried to leave. Secolsky, however, got on his knees, begged for forgiveness, and asked her to promise that she would not tell Stake about the incident. He then blocked her from leaving, touched her shoulder, and again asked her not to tell Stake.

The two did not cut off contact, however, and Secolsky continued to harass Park. He once asked her to kiss him, and he called her excessively. Park nonetheless agreed to work at Secolsky's private company in exchange for his promise to petition on her behalf for an H-1B visa that would allow her to stay in the country. But Secolsky eventually stopped sponsoring Park's visa because he believed that she was "blackmailing" him. Five months after she began working for him, Secolsky decided to end her job.

Meanwhile, in June 2014, Park complained about Secolsky's misconduct to the university's Office of Diversity, Equity, and Access ("ODEA"). There, she met with Michal Hudson, the office's senior specialist for matters involving Title IX and the Americans with Disabilities Act. Hudson investigated her claim and met with both Stake and Secolsky. Hudson then told Park that her office could not help her because it did not appear that she or Secolsky was employed or affiliated with the university. Unless she could demonstrate otherwise, Hudson concluded, the university did not have authority to handle her complaints. Park disputed that conclusion, arguing that her Optional Practical Training position sufficed as affiliation. She requested a meeting with ODEA's director, Heidi Johnson, to provide additional information. But ODEA concluded that because Secolsky had no existing affiliation with the university, it lacked the authority to regulate his conduct.

After Park contacted ODEA, her immigration status fell into jeopardy. Professor Nancy Abelmann, Park's university sponsor for the Optional Practical Training, was on academic leave and could no longer be Park's sponsor. Around this time, Secolsky also had stopped sponsoring Park's H-1B visa petition. Park did, however, receive permanent resident status in March 2015.

Park then brought this complaint in federal court. She sued Secolsky (for battery, assault, false imprisonment, and other torts); Stake (for assault, battery, a hate crime, and other torts); Hudson and Johnson (for retaliation in violation of 42 U.S.C. § 1981 and equal-protection violations under 42 U.S.C. § 1983); and the Board of Trustees (for discrimination and retaliation under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, retaliation under 42 U.S.C. § 1981, and denial of equal protection under 42 U.S.C. § 1983).

The district court granted the defendants' motion to dismiss in part and denied it in part. The court relied on Eleventh Amendment grounds to dismiss Park's § 1983 and

§ 1981 claims against the Board of Trustees and her § 1981 retaliation claim against Hudson and Johnson.

Discovery ensued, and all parties then moved for summary judgment. The court entered judgment in favor of Park on some claims against Secolsky and Stake, in favor of the university defendants on all of Park's claims, and allowed Park to proceed on the remaining claims at trial. Regarding Park's equal-protection claims against Stake, Hudson, and Johnson, the court found that Park failed to demonstrate that the defendants denied her equal protection of the law because there was no evidence that they knew about Secolsky's sexual misconduct and facilitated or turned a blind eye to it. Regarding Park's retaliation claims against the Board, the court found no causal connection between Park's complaint to ODEA and the termination of her Optional Practical Training status. The court entered judgment in favor of Park on her battery claims (leaving to the jury the determination whether to award her damages, if any) and allowed her to proceed to trial on several other claims against Secolsky and Stake.

Before trial, Park and Stake filed motions in limine to exclude certain evidence. Park moved to bar the introduction of evidence that she engaged in other sexual behavior, and the court granted this motion. Stake moved to bar any testimony or evidence relating to a package sent to Park's attorney from an anonymous sender; the package contained items of clothing and notes written by Stake that allegedly concerned a previous romantic relationship. The court granted Stake's motion, concluding that even if the evidence were relevant, the prejudicial effect of its admission would outweigh any probative value.

The case proceeded to trial, and a jury found Secolsky liable on numerous claims (assault, false imprisonment, violations of Park's civil and due process rights, and intentional infliction of emotional distress) and awarded Park $500,000. Although the judge had found Stake liable for battery for kissing Park on the forehead, the jury declined to award her compensatory damages on that claim. She had not requested nominal damages.

In two post-trial rulings, the district court denied Park's motion for a new trial and awarded Stake costs for having been a prevailing party in the litigation.

Secolsky appealed, Park cross-appealed, and we consolidated the two appeals.

### I. Secolsky's Appeal

We begin with Secolsky, whose briefs are rambling accounts of his interactions with Park and fail to present legal arguments. He asserts, for instance, that the district court erred in allowing "only 5 of about 23" of his exhibits at trial, but then mentions only one excluded exhibit (and, for that matter, he does not identify where in the record it might be located). He makes other generalized assertions of error but fails to cite any supporting authority. Federal Rule of Appellate Procedure 28(a)(8)(A) requires an appellant's brief to contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which [he] relies." Secolsky has not complied with these requirements, so he has given us no basis to question the decisions of the jury or the district judge. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018) ("[A]n appellate brief that does not even *try* to engage the reasons the appellant lost has no prospect of success."). We therefore dismiss Secolsky's appeal.

### II. Park's Appeal

#### A. District Court's Dismissal Order

Park generally challenges the dismissal of her § 1981 and § 1983 claims against the university defendants. But governing boards of public universities are not "persons" capable of being sued under these statutes. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Haynes v. Ind. Univ.*, 902 F.3d 724, 731 (7th Cir. 2018). Nor may Park bring a claim for damages against the university administrators in their official capacities. *See Haynes*, 902 F.3d at 731–32. Park gives no reason to disturb the district court's ruling.

#### B. District Court's Summary Judgment Order

##### 1. Deliberate Indifference by the Board of Trustees

Park next challenges the entry of summary judgment for the Board of Trustees on her claim that ODEA violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, through its deliberate indifference to her reports of sexual harassment. But to be liable under Title IX, school officials must have caused students to endure harassment or exposed them to it. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645

(1999). Once Park reported Secolsky's misconduct to ODEA, the only harassment she experienced was during her employment at Secolsky's company, outside of ODEA's purview. We therefore agree with the district court that Park failed to produce evidence from which a jury reasonably could find that ODEA caused the harassment or subjected her to it.

### 2. Retaliation by the Board of Trustees

Park also contends that, contrary to the district court's conclusion, ODEA retaliated against her by having Nancy Abelmann, her faculty sponsor for her Optional Practical Training visa, cancel the sponsorship. Park needed to present evidence of a but-for causal connection between her complaints of Secolsky's misconduct and the cancellation of her sponsorship. *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). Other than her bare assertions, however, Park presented no evidence of such a connection, nor has she offered evidence that Abelmann knew of her complaints or of Secolsky's misconduct. The district court, therefore, properly concluded that Park failed to introduce sufficient evidence for a jury to find that the Board retaliated against her for complaining about sexual harassment.

### 3. Equal-Protection Violation by Stake, Hudson, and Johnson

Park next contends that the district court erred by entering summary judgment for Stake, Hudson, and Johnson on her equal-protection claim. She maintains that the defendants are liable for Secolsky's harassment under a theory of supervisory liability because they failed to prevent his harassment and turned a blind eye to it. But supervisors can be liable only for their own misdeeds; they cannot be held vicariously liable for the acts of their subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) (en banc). Thus, Park's supervisory liability claim necessarily fails.

## C. Motion In Limine

Park next challenges the district court's ruling on Stake's motion in limine not to admit evidence of the anonymous package because its admission would be unduly prejudicial. We review that decision for abuse of discretion and will reverse "only if no reasonable person would agree with the district court's view." *United States v. Proano*, 912 F.3d 431, 438 (7th Cir. 2019). Park contends that the district court erred by not allowing this evidence, which, she believes, shows that Stake sexually assaulted a

woman in the past. But even if we assumed that the district court abused its discretion by not admitting the package into evidence, any error would be harmless because the court already had entered judgment against Stake on Park's battery claim, and she does not explain how this evidence would have influenced the jury's damages calculation. *See, e.g.*, *United States v. Common*, 818 F.3d 323, 333 (7th Cir. 2016).

## D. Trial

Park generally contends that the jury erred by not finding in her favor on all of her claims. But she did not preserve this argument in a post-trial motion for judgment as a matter of law under Federal Rule of Civil Procedure 50. Without such a motion, "appellate courts are 'powerless' to review challenges to the sufficiency of the evidence supporting a civil jury verdict." *Collins v. Lochard*, 792 F.3d 828, 831 (7th Cir. 2015) (citing *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405 (2006)).

### 1. Evidentiary Challenges at Trial

Park next raises a host of challenges to the district court's evidentiary rulings that we review for abuse of discretion. *See Proano*, 912 F.3d at 438.

#### a. Judicial Notice of Korean Judgment

Park first contends that the district court erred by not taking judicial notice of a Korean judgment that, according to her, confirms a medical procedure she underwent to remove a scar on her forehead, and thus would bolster her claim that Stake had kissed her on the lips (and not, as he contended, on the forehead). The district court refused to take judicial notice of that judgment, expressing uncertainty over the accuracy and legitimacy of its translation. *See* FED. R. EVID. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Here, Park herself translated the Korean judgment; she did not attempt to have it translated or verified by an independent third party. The district court stated that it could not be certain of the accuracy of the translation, so we agree with its decision not to take judicial notice of that judgment. *See Gabbanelli Accordions & Imports, LLC v. Gabbanelli*, 575 F.3d 693, 696 (7th Cir. 2009).

### b. Park's Medical Records

Park also argues that the district court erred by allowing the Board of Trustees' counsel to question her at trial about her medical records in which she revealed to her doctor that she had a "new partner." Although the court previously had granted Park's motion in limine to exclude evidence of her sexual predisposition, *see* FED. R. EVID. 412(a), the court allowed the Board at trial to challenge Park's credibility through questioning about her partner. But the district court was correct in concluding that the probative value of this information outweighed any prejudice, *see* FED. R. EVID. 412(b)(2), because Stake's attorney used the medical records to show that she had a new partner and was not, contrary to her contention, "isolated" after being assaulted by Stake and Secolsky. The records were not impermissibly used to "prove that [Park] engaged in other sexual behavior." FED. R. EVID. 412(a).

### c. Park's Email with Stake

Next, Park contends that the district court erred by determining that an email of hers that she sought to introduce into evidence was unauthenticated and inadmissible, since Stake testified that he did not recognize it. *See* FED. R. EVID. 901(b)(1). But Park did not meet her burden of establishing the necessary foundation to admit the email, *see* FED. R. EVID. 901(a), *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012), so the district court did not err.

### 2. Interpreter

Park also argues that the district court erred by rejecting her request to have her son translate her trial testimony. (She does not specify what testimony she wanted translated.) The judge denied her request, concluding that it would be better for the jury to hear her tone when she spoke. But she contends that her tone still would have come through more clearly if her son (a fluent English speaker) had translated for her. Park does not contend, however, that her English is insufficient, that the trial was too complex for her to follow, or that she had difficulty communicating with her attorney. *See United States v. Zaragoza*, 543 F.3d 943, 949 (7th Cir. 2008) (explaining that courts should generally consider party's knowledge of English and complexity of proceedings and testimony when deciding whether to appoint an interpreter). Park's assertion that her son's assistance would have "greatly" helped her (without explaining how) is insufficient to show that the court abused its discretion.

### E. Post-Trial

Park next challenges the court's determination that Stake had been a prevailing party in the litigation and therefore was entitled to costs. The court determined that Stake was the prevailing party because all but one claim—battery—had been adjudged in his favor and the jury had awarded zero damages on that claim. But a party "prevails" if he wins a substantial part of the litigation, even when he does not succeed on every claim. *See Baker v. Lindgren*, 856 F.3d 498, 502 (7th Cir. 2017). Although Stake was found to have committed battery against Park, the jury awarded no compensatory damages on that claim. And Park did not seek—so the jury did not award—nominal damages. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992) ("[A] plaintiff who wins nominal damages is a prevailing party …."). Additionally, the jury found for Stake on Park's claims of hate crime and gender-related violence. Because Stake prevailed in a substantial part of the litigation, the district court did not abuse its discretion in its ruling.

Finally, Park tries to incorporate by reference into her appellate briefs arguments that she had raised to the district court—namely, her post-trial motions to supplement the record on appeal with "omitted evidence [that] was not available" when the district court entered judgment. Appellate briefs, however, cannot incorporate other documents by reference. *See Parker v. Franklin Cty. Cmty. Sch. Corp.*, 667 F.3d 910, 924 (7th Cir. 2012). And we cannot admit on appeal documents that were not made a part of the record in the district court. *Midwest Fence Corp. v. U. S. Dep't of Transp.*, 840 F.3d 932, 946 (7th Cir. 2016).

We have considered Park's remaining arguments, and none has merit.

Secolsky's appeal is DISMISSED, and on Park's appeal the judgment is AFFIRMED.